No. 22-13691-HH

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

WILLIAM HORNADY, *ET AL.*,

*Appellees / Cross-Appellants,*

vs.

OUTOKUMPU STAINLESS USA, LLC,

*Appellant / Cross-Appellee.*

_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT OF ALABAMA

No. 1:18-cv-00317-JB-N

---

## APPELLEES / CROSS-APPELLANTS' OPENING BRIEF

---

Ian D. Rosenthal
Davis, Davis & Associates
27180 Pollard Road
Daphne, Alabama 36526
(251) 621-1555

Patrick H. Sims
Sims Law Firm, LLC
P.O. Box 7112
Mobile, AL 36670
(251) 490-9424

Frederick G. Helmsing, Jr.
McDowell Knight Roedder & Sledge, LLC
1 North Water Street, Suite 13290
Mobile, Alabama 36602
(251) 432-5300

ATTORNEYS FOR APPELLEES / CROSS-APPELLANTS WILLIAM
HORNADY, ET AL

No. 22-13691-HH

## IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

WILLIAM HORNADY, ET AL.,
*Appellees / Cross-Appellants,*

vs.

OUTOKUMPU STAINLESS USA, LLC,
*Appellant / Cross-Appellee.*

## APPELLEES / CROSS-APPELLANTS CERTIFICATE OF INTERESTED PERSONS

Counsel of record for Appellees / Cross-Appellants William Hornady, et al. state that they believe the Certificate of Interested Persons filed by Outokumpu Stainless USA, LLC ("OTK") is accurate.

/s/ *Ian D. Rosenthal*
Ian D. Rosenthal

One of the Attorneys for
Appellees / Cross-Appellants
William Hornady, et al.

Ian D. Rosenthal
Davis, Davis & Associates
27180 Pollard Road
Daphne, Alabama 36526
(251) 621-1555
ian@ddalawfirm.com

C-1

## <u>Statement Regarding Oral Argument</u>

An examination of the briefs and the record shows that the legal issues the parties raise are resolved by dispositive precedent. Any discussion of procedural or evidentiary facts is much more efficiently made by written brief rather than by oral presentations. The trial court was "incredulous" about positions Outokumpu Stainless USA, LLC "OTK" took. (Doc. 409, PageId 6839) Oral argument, therefore, is unnecessary in this case. Fed. R. App. P. 34(a).

OTK suggests the amount of the default judgment ($13.1 million) is a reason for oral argument. Monetary amounts are not a consideration under Rule 34(a), but an FLSA overtime pay recovery that averages about $9,000 per year, per person, including liquidated damages is unremarkable.

# <u>Table of Contents</u>

**Page**

Statement Regarding Oral Argument ................................................. i

Table of Authorities .................................................................... iv

I.    Statement of Jurisdiction ................................................ 1

II.   Statement of the Issues ................................................... 2

    A.   Appeal Issues ......................................................... 2

    B.   Cross-Appeal Issues ............................................... 4

III.  Supplemental Statement of the Case .............................. 5

    A.   Nature of the Case .................................................. 5

    B.   Statement of Facts and Procedural History ............. 8

        1.   Appeal ........................................................... 8

            a.   Facts relating to discretion to enter default judgment ................................ 8

                (i)   Events before November 18, 2021 .............. 9

                (ii)  November 18, 2021 – October 4, 2022 Events ............................................ 18

            b.   The TAC alleged facts plausibly entitling Hornady to relief .............................. 22

                (i)   Bonuses ....................................... 22

                  (ii)  Designated Week .......................... 23

             c.   Damages Quantifications ..................... 23

        2.   Cross-Appeal Statement of Facts ............... 25

    C.   Standards of Review ............................................. 28

IV.   Summary of the Argument ........................................... 31

    A.   Appeal .................................................................. 31

    B.   Cross-Appeal ....................................................... 33

V.    Argument (Appeal) ........................................................ 34

    A.    Introduction .................................................... 34

    B.    The district court had discretion to enter default
        judgment ....................................................... 35

        1.    Case Law ................................................ 35

        2.    The November 18, 2021 Order ................... 42

        3.    The October 4, 2022 Order ....................... 48

        4.    OTK's miscellaneous contentions that touch on
            discretion to enter default .......................... 54

        5.    District Courts may consider both irremediable
            effects of misconduct and attorney misconduct
            in making discretionary sanctions decisions ............. 61

            a.    Remediable / Irremediable Consequences .......... 61

            b.    Attorney Misconduct ........................................... 63

        6.    Damages arguments ...................................... 64

    C.    The well-pleaded factual allegations in the TAC
        plausibly entitle Hornady to relief ....................... 66

        1.    Workweek ................................................ 67

        2.    Bonuses ................................................... 68

        3.    Common law claims ................................... 74

    D.    Detailed affidavits are not mandatory before entering
        a judgment for damages quantified by mathematical
        calculations ................................................... 76

VI.    Argument (Cross-Appeal) ........................................... 78

    A.    The district court erred by applying a statute of
        limitations defense that was already struck ...................... 78

    B.    A mooted equitable tolling ruling cannot be the basis
        to apply a statute of limitations defense ............................. 79

VII.    Conclusion .................................................................. 80

## <u>Table of Citations</u>

**Page(s)**

**Cases:**

*Absolute Activist Value Master Fund Ltd. v. Devine,*
  826 F. App'x 876 (11th Cir. 2020)..................................................38

*Adolph Coors Co. v. Movement Against Racism & the Klan,*
  777 F.2d 1538 (11th Cir. 1985) ......................................................76

*Akers v. Tim Jungblut Trucking, Inc.,*
  2020 WL 1447647 (S.D. Ind. 2020)................................................70

*Am. Dental Ass'n v. Cigna Corp.,*
  605 F.3d 1283 (11th Cir. 2010) ......................................................66

*Amlong & Amlong, P.A. v. Denny's, Inc.,*
  500 F.3d 1230 (11th Cir. 2007) ......................................................37

*Avery v. City of Talladega, Ala.,*
  24 F.3d 1337 (11th Cir. 1994) ........................................................75

*Aztec Steel Co. v. Florida Steel Corp.,*
  691 F.2d 480 (11th Cir.1982), *cert. denied,* 460 U.S. 1040
  (1983) .........................................................................29, 39, 62-63

*Bambu Sales, Inc. v. Ozak Trading Inc.,*
  58 F.3d 849 (2d Cir. 1995)..............................................................19

*Barnes v. Dalton,*
  158 F.3d 1212 (11th Cir. 1998) ......................................................35

*Barragan v. Home Depot U.S.A., Inc.,*
  2021 WL 3634851 (S.D. Cal. Aug. 17, 2021) ............................70, 71

*Breig v. Covanta Holding Corp.,*
  2022 WL 837242 (E.D. Pa. 2022)...................................................70

*Bridge v. Phoenix Bond & Indem. Co.,*
  553 U.S. 639 (2008) .......................................................................35

*Brock v. Two R Drilling Co., Inc.,*
  789 F.2d 1177 (5th Cir. 1986) ........................................................70

iv

*Bruno v. Ford,*
    2021 WL 4734412 (5th Cir. 2021) ................................................ 68

*Bujalsi v. Kozy's Rest., Inc.,*
    2017 WL 57344 (N.D. Ala. Jan. 5, 2017) ....................................... 74

*Byrne v. Nexhat,*
    261 F.3d 1075 (11th Cir. 2001) .......................................... 35, 39, 64

*Carlucci v. Piper Aircraft Corp.,*
    102 F.R.D. 472 (S.D. Fla. 1984) ................................................ 37, 47

*Carlucci v. Piper Aircraft Corp.,*
    775 F.2d 1440 (11th Cir. 1985) ...................................................... 29

*Chambers v. Nasco, Inc.,*
    501 U.S. 32 (1991) ................................................................. 29, 35

*Chudasama v. Mazda Motor Corp.,*
    123 F.3d 1353 (11th Cir. 1997) ...................................................... 37

*Cleveland Bd. of Educ. v. Loudermill,*
    470 U.S. 532 (1985) ...................................................................... 80

*Cooter & Gell v. Hartmarx Corp.,*
    496 U.S. 384, (1990) ............................................................... 29, 30

*Eades v. Alabama Dep't of Hum. Res.,*
    298 F. App'x 862 (11th Cir. 2008) ..................................... 38, 40, 57

*Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.,*
    561 F.3d 1298 (11th Cir. 2009) .......................................... 35, 36, 39

*EEOC v. Troy State Univ.,*
    693 F.2d 1353 (11th Cir. 1982) ...................................................... 59

*Fernandez v. City of Fruitland Park,*
    2016 WL 8329400 (M.D. Fla. 2016) .............................................. 75

*Freixa v. Prestige Cruise Services, LLC,*
    853 F.3d 1344 (11th Cir. 2017) ...................................................... 65

*Gen. Elec. Co. v. Joiner,*
    522 U.S. 136 (1997) ...................................................................... 30

*Genesis Healthcare Corp. v. Symczyk,*
    569 U.S. 66 (2013) .......................................................... 79

*Godfrey v. BellSouth Telecommunications, Inc.,*
    89 F.3d 755 (11th Cir. 1996) ......................................... 28

*Harris by & through Davis v. Autry,*
    No. 20-13480, 2022 WL 392169 (11th Cir. Feb. 9, 2022) .............. 66

*Harris v. Best Buy Stores, L.P.,*
    2016 WL 4073327 (N.D. Cal. 2016) ................................. 70

*In re McLean,*
    794 F.3d 1313 (11th Cir. 2015) ...................................... 30

*In re Porto,*
    645 F. 3d 1294 (11th Cir. 2011), *abrogated in part on other*
    *grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund*
    *of Int'l Union of Operating Eng'rs & Participating Emps.,*
    571 U.S. 177 (2014) ............................................ 40-41, 64

*In re Sunshine Stores, Inc.,*
    456 F. 3d 1291 (11th Cir. 2006) ............................... *passim*

*Jaffe v. Grant,*
    793 F.2d 1182 (11th Cir.1986) .................................. 35, 39

*Jochum v. Schmidt,*
    570 F.2d 1229 (5th Cir. 1978) ........................................ 41

*Johnson v. Phoenix Group, LLC,*
    2013 WL 1345799 (S.D. Ohio) ...................................... 68

*Kuebel v. Black & Decker, Inc.,*
    643 F. 3d 352 (2nd Cir. 2011) ....................................... 55

*Dav v. Liberty Nat'l Life Ins. Co.,*
    122 F. 3d 1012 (11th Cir. 1997) ..................................... 79

*Link v. Wabash R. Co.,*
    370 U.S. 626 (1962) .......................................... *passim*

*Maiz v. Virani,*
    253 F.3d 641 (11th Cir. 2001) ....................................... 38

*Malautea v. Suzuki Motor Co.*,
    987 F.2d 1536 (11th Cir. 1993) ............................... 34, 36, 37, 46, 62

*Marshall v. Segona*,
    621 F. 2d 763 (5th Cir. 1980) ........................................................ 39

*Media Services Group v. Bay Cities Communications, Inc.*,
    237 F.3d 1326 (11th Cir. 2001) ...................................................... 28

*Mercer v. Mitchell*,
    908 F.2d 763 (11th Cir.1990) ........................................................ 30

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
    427 U.S. 639 (1976) ............................................................ *passim*

*Old Chief v. United States*,
    519 U.S. 172 (1997) ...................................................................... 30

*Olivas v. A Little Havana Check Cash, Inc.*,
    324 Fed. Appx 839 (11th Cir. 2009)............................................... 38

*P&K Rest. Enter., LLC v. Jackson*,
    758 F. App'x 844 (11th Cir. 2019).................................................. 60

*Pritchett v. Werner Enterprises, Inc.*,
    Civil Action No. 12–0182–WS–C (S.D. Ala) ................................... 68

*Rasmussen v. Cent. Fla. Council Boy Scouts of Am., Inc.*,
    412 F. App'x 230 (11th Cir. 2011)............................................. 36, 37

*Ross v. M/Y ANDREA ARAS*,
    278 Fed App'x 988 (11th Cir. 2008) ............................................... 38

*Russell v. Government Employees Ins. Co.*,
    787 F. App'x 953 (9th Cir. 2019)........................................ 70, 71, 72

*Sapuppo v. Allstate Floridian Ins.*,
    739 F.3d 678 (11th Cir. 2014) .................................................. 38, 42

*Searock v. Stripling*,
    736 F. 2d 650 (11th Cir. 1984) ................................................. 55, 58

*Sec'y of Lab. v. Labbe*,
    319 F. App'x 761 (11th Cir. 2008).................................................. 67

*Shepard v. City of Waterloo*,
    2015 WL 9165915 (N.D. Iowa 2015) .............................................. 70

*Siomkin v. Fairchild Camera & Inv. Corp.*,
    174 F.2d 289 (2d Cir. 1949) ............................................................ 70

*Smith v. Werner Enterprises, Inc.*,
    2015 WL 4459414 (S.D. Ala. 2015) ................................................ 68

*Thomas v. Clayton Cnty.  Bd. of Commissioners*,
    2023 WL 1487766 (11th Cir. Feb. 3, 2023) ............................... 37-38

*Thornton v. Hospitality Management, Assoc., Inc.*,
    787 Fed. Appx.  634 (11th Cir. 2019) ............................................ 37

*Troxel v. Gunite Pros, LLC*,
    2022 WL 37525 (S.D. Ala. 2022) .................................................... 66

*United Artists Corp. v. Freeman*,
    605 F.2d 854 (5th Cir.1979) ........................................................... 76

*United States v. Frazier*,
    387 F.3d 1244 (11th Cir. 2004) ............................................... 30, 38

*United States v. Shamsid-Deen*,
    61 F. 4th 935 (11th Cir. 2023) ....................................................... 30

*United States v. Sigma Int'l, Inc.*,
    244 F. 3d 841 (11th Cir. 2001) ...................................................... 39

*Watts v. Fla. Int'l Univ.*,
    495 F.3d 1289 (11th Cir. 2007) ..................................................... 67

*Weninger v. Gen. Mills Operations, LLC*,
    344 F. Supp. 3d 1005 (E.D. Wis. 2018) ......................................... 70

*White v. Publix Super Markets, Inc.*,
    2015 WL 494837 (M.D. Tenn. 2015) .............................................. 70

## Statutes & Other Authorities:

29 U.S.C. § 207(e) ...................................................... 22, 69, 71

29 U.S.C. § 255(a) .............................................................. 26

28 U.S.C. § 1291 .......................................................................... 1

29 C.F.R. § 778.210 ........................................... 69, 70, 71, 74

29 C.F.R. § 779.419(b) .............................................................. 65

11th Cir. R. 28-1(i)(ii) ............................................................... 8

Fed. R. Civ. P. 8 ....................................................................... 32

Fed. R. Civ. P. 8(a) .................................................................. 66

Fed. R. Civ. P. 8(c) .................................................................. 79

Fed. R. Civ. P. 18 ........................................................... 6, 61, 75

Fed. R. Civ. P. 20 ............................................................... 6, 61

Fed. R. Civ. P. 20(a) ................................................................ 75

Fed. R. Civ. P. 54(b) ................................................................ 52

Fed. R. Civ. P. 55(c) ................................................................ 52

Opinion Letter FLSA, 2019 WL 2914103 (July 1, 2019) ........................ 70

Opinion Letter FLSA, 2018 WL 5393308 (Jan. 5, 2018) ........................ 70

Opinion Letter FLSA, 2006 WL 4512946 (Feb. 17, 2016) ..................... 70

Opinion Letter FLSA, 2005 WL 3308593 (Aug. 26, 2005) ..................... 70

Opinion Letter FLSA, 2004 WL 3177882 (Sept. 21, 2004) .................... 70

Opinion Letter FLSA, 1998 WL 852723 (Feb. 23 1998) ........................ 70

Opinion Letter FLSA, 1997 WL 998000 (Jan. 23, 1997) ........................ 70

Opinion Letter FLSA, 1973 WL 36798 (Jan. 8 1973) ........................ 70-71

Opinion Letter FLSA, 1970 WL 26444 (Aug. 17, 1970) ........................ 71

Wayne D. Brazil, *Views From the Front Lines*,
    1980 AM.B.FOUND.RES.J. 217 (1980) .......................................... 34

## I.    <u>Statement of Jurisdiction</u>

The Appellees / Cross-Appellants (collectively referred to as "Hornady") agree with OTK's Statement of Jurisdiction.  As to the cross-appeal, the notice was timely filed on November 7, 2022. (Doc. 426) This Court has appellate jurisdiction.  28 U.S.C. § 1291

## II.    Statement of the Issues

### A. Appeal Issues.

Hornady submits that the Issues presented by OTK's appeal are accurately described as:

1.    Did the district court abuse its discretion by entering default judgment[1] as a sanction when it:

   A. (1) conducted a *de novo* review of the record following objections to a Report and Recommendation ("R&R") that recommended severe sanctions, (2) set out the clear and convincing evidence of years of "pervasive," "deliberate," "bad faith" misconduct (including violations of discovery Orders) that was "designed to derail the orderly resolution of Plaintiffs' lawsuit" and "poisoned the whole case," (3) along with findings about later, discrete misconduct by one of OTK's attorneys, and (4) considered lesser sanctions and explained why they would not suffice.  (Doc. 344,

---

[1] The district court "entered a default judgment as to Defendant's liability, with damages to be assessed at a later date." (Doc. 409, PageId 6828-6829) It also often referred to the "default judgment" and Hornady will generally use the phrasing "default judgment."

2

PageId 4627, 4632-4634, 4639, 4654, 4675, 4679, 4686-4687, 4702, 4709-4712, 4714)

B. Allowed briefs, evidentiary submissions, and arguments for reconsideration before ruling that it remained convinced of its prior findings and setting out how OTK (1) did not address substantial parts of the initial ruling, (2) made some arguments that were "simply not credible," and (3) relied, in part, on "false, after-the-fact" declarations of its Payroll Supervisor, Melissa Pledger. (Doc. 409, PageId 6834-36, 6842-6843)

2.    Did the district court abuse its discretion by factoring into a decision about what sanction to impose (a) remediable and irremediable litigation effects, or (b) attorney misconduct?

3.    Do due process considerations limit a district court's discretion to sanction a party for its own misconduct when its counsel also commits discrete misconduct while trying to defend the party against sanctions?

4.    Do the allegations of the Third Amended Complaint ("TAC") state factual content that, if true, plausibly entitles Hornady to relief?

5.    Are detailed affidavits mandatory when damages after a default judgment are quantified based on mathematical calculations correctly applied to stipulated amounts?

6.    Must a trial court set aside a default judgment on-demand after deciding that a litigant willfully acted in bad faith and lesser sanctions were insufficient?

## B. Cross-Appeal Issues.

7.    Is it an abuse of discretion to limit damages by applying a statute of limitations ("SOL") defense that has been struck?

8.    Is it a deprivation of due process when a district court rules based, in part, on the absence of a showing about issues the district court instructed the parties not to submit briefs about until other scheduling orders were entered?

### III.    Supplemental Statement of the Case

**A. Nature of the Case.**

The November 18, 2021 and October 4, 2022 Orders (Docs. 344, 409) set out most of the content that would usually be in a Statement of the Case. They describe how the district court carefully considered and reconsidered the entire record and why a default judgment was the only sufficient sanction. The primary appellate issue is whether it is an abuse of discretion to impose a default sanction after years of intentional, bad faith litigation misconduct.

Other issues involve the post-default case-specific proceedings. Those can be resolved by applying well-settled legal principles to narrow subject matter – notwithstanding the messy procedural backdrop.

Hornady's First Amended Complaint made (1) a Fair Labor Standards Act ("FLSA") collective claim seeking overtime pay for overlapping violations (involving time-rounding, bonuses, and what "week" was used for calculating pay), (2) a "pure" FLSA "gap time" collective claim (for weeks in which less than 40 hours were worked), and (3) common law claims in the alternative to the gap time claim. (Doc. 5) All the FLSA collective members were common law claim plaintiffs. (Doc.

223, PageId 2661[2], see Fed. R. Civ. P. 18, 20) The collective action was conditionally certified May 30, 2019. (Doc. 93) No motion for decertification was filed. (Compare Doc. 24, p. 3) The TAC was filed in July 2020. (Doc. 223) Its allegations were deemed true as the basis for the October 2022 Final Judgment. (Docs. 344, 351, 409, 410)

The lengthy November 2021 and October 2022 Orders concisely summarize the voluminous record (motions, transcripts, and orders) detailing OTK's misconduct. (Docs. 344, 409) In 2018, the district court's standard preliminary FLSA Order required OTK to provide verified information about its time and pay records. (Doc. 24, p. 2) Then, the Superseding Preliminary Scheduling Order specifically required OTK to produce Excel files that included, among other things, all hourly rates. (Doc. 64, p. 3) Scheduling Orders and discovery went forward based on OTK's representations. Over the years, OTK's story changed about what records and data it had, and what formats its records and data were in. As OTK changed its story there were motions to compel, hearings, and

---

[2] While the case was pending the PageId system changed so the early documents have page numbers and the later documents have PageId references.

orders.  OTK violated those orders which led to sanctions motions and more orders.  (See Docs. 216, 229, 238, 261, 344, 344-1, 409)

OTK's misconduct seriously delayed the lawsuit even before separate issues involving one of OTK's attorneys at Littler Mendelson ("Littler") arose in early 2021 relating to a subpoena to the "payroll services provider" ADP, Inc. ("ADP").  The subpoena sought only some of the information OTK had been ordered to produce that OTK claimed (falsely, in part) it could not produce.  (Compare Docs. 212, 242-2, Doc. 300-1, PageId 3807-3808, paras. 6, 8, 11-23) The subpoena itself was a stopgap measure to try to remedy OTK's sanctionable conduct after Hornady sought sanctions.  (Docs. 216, 229, PageId 2697)  When that subpoena did not produce results, Hornady renewed the sanctions motion. (Doc. 238)  An R&R imposed significant sanctions. (Doc. 261) The objections to the R&R went to the district court.

By then, discovery was supposed to be over.  Hornady had already sought partial summary judgment on all substantive claims.  (Docs. 244-246) The district court set all motions for hearing on February 17, 2021. (Doc. 278)  As its *de novo* review progressed through and beyond show-cause hearings the district court recognized the scope and severity of

OTK's misconduct, and that the May 2021 trial setting was unworkable. (Doc. 318, p. 3) The district court stated its intention to prepare an order entering default, and started assessing a process to determine damages. (Doc. 318, pp. 7-8, 18-19),

 The Final Judgment was not entered until October 4, 2022. (Doc. 410)

## B. Statement of Facts and Procedural History.

### 1. Appeal.

Hornady will supplement OTK's presentation which omits some of what 11th Cir. R. 28-1(i)(ii) requires.  This statement is divided into content relating to: (a) Whether the entry of default judgment was an abuse of discretion before or after reconsideration, (b) Whether the TAC stated facts that plausibly entitled Hornady to relief, and (c) Damages quantifications.

### a. *Facts relating to discretion to enter default judgment.*

Subparts 3, 4, and 6 - 10 of OTK's Statement of Facts generally relate to whether the district court abused its discretion in entering default judgment in November 2021, and reaffirming that decision in October 2022.  Additional content is pertinent background.

### (i) *Events before November 18, 2021*.

The Appendix to the November 2021 Order describes 12 Orders and some of the ways OTK violated them. (Doc. 344-1) Hornady incorporates that Appendix and the descriptions of OTK's violations throughout the November 2021 and October 2022 Orders by reference. (Docs. 344, 409) OTK does not mention some of those violations.

Two points of emphasis are that the early Orders in 2018 required OTK (a) to file Verified Summaries "of all hours worked by" plaintiffs "during each relevant pay period, the rate of pay" along with "all time sheets and payroll records that support or relate to the time periods in the Verified Summary," and (b) to produce pay records in Excel that included all rates of pay. (Doc. 24, p. 3, Doc. 64, p. 3)

Emails OTK later produced in between the November 2021 and October 2022 orders showed how Ms. Pledger, the Payroll Supervisor, prepared Excel files in 2018 with pay rates and how she was instructed to do the same in 2020. (Doc. 390-5, PageId 6330, 6336, 6341-6345, 6352) OTK's July 2019 discovery responses showed it had Excel time clock records through August 13, 2017. (Doc. 391-2, PageId 6418) In September 2019 OTK stated in response to a motion to compel that it

would produce each Plaintiff's time and pay records "in the same manner as previously produced." (Doc. 148, PageId 963)

Pledger attended a December 9, 2019 conference with the Magistrate Judge. One of the main subjects of discussion was ensuring that the time and pay data OTK would produce was the same as the 2018 production. (Doc. 338, pp. 53, 66)

After Pledger and other OTK personnel were deposed in March 2020, the parties filed a Joint Stipulated Order on May 28, 2020 to address on-going discovery issues. (Docs. 207, 208, 212)[3] OTK recited some of its provisions that it later violated. (OB 42)[4] There were others encompassing additional data production, meet and confer requirements, supplemental deponent designations, and Bonus Incentive documents that another OTK deponent, Dave Scheid, testified were transmitted by email every month. (Doc. 212, PageId 2439-2440)

---

[3] The Stipulated Order was signed May 28, 2020 but it has a date stamp of June 2, 2020. (Docs. 208, 212) The district court referred to it as the June 2, 2020 order and Hornady will do the same. (See Doc. 344, PageId 3477)

[4] Hornady refers to OTK's Opening Brief as "OB".

10

Hornady's June 15, 2020 motion sought both compliance and default sanctions. That motion described how OTK had violated the two-week old Stipulated Order, along with the other long-standing items of non-compliance. (Doc. 216)

In response OTK acknowledged that its 2020 production "left the Plaintiffs without the pay rate information." (Doc. 220, PageId 2626) OTK also told the court to look to Pledger's deposition testimony because its "time and pay records" did not "provide a full understanding of the Defendant's time and pay practices." (Doc. 220, PageId 2626-2627) Nine months later OTK told the court that Pledger's testimony was "inaccurate" but that "the pay records and the time records govern the outcome." (Doc. 318, p. 34)

By September 3, 2020 OTK had both agreed to produce and been ordered to produce time and pay records in Excel. It had demonstrated it could produce time and pay records in Excel but had produced incomplete and altered data. It had suggested that a subpoena to ADP could remedy OTK's failings but nothing productive resulted from the subpoena. So, Hornady filed a renewed sanctions motion. (Doc. 238) It

11

was another eight months before plaintiffs started getting Excel data (after the 2021 show-cause hearings).

OTK mentions an October, 2020 hearing but omits its content. (OB p. 48) At the outset the Magistrate Judge identifed the "issue that keeps rearing its ugly head about the wages and the timesheet issue." (Doc. 333, p. 2) The chronology of production in 2018 of Excel files with some pay rate information followed by production in 2020 of Excel files without pay rates was discussed. (Doc. 333, pp. 4-11, 24-29, 45-49). Also discussed was the fact that the .pdfs of clock in / clock out times were functionally useless because without an Excel production every time entry on the .pdfs would have to be manually retyped. (Doc. 333, pp. 15, 25)

The Magistrate Judge asked about the ADP subpoena. OTK's counsel stated: "We need this stuff as much as plaintiffs do." (Doc. 333, p.17) He identified ADP as a Littler client. The Magistrate Judge foresaw a future when "ADP suddenly decides to regurgitate these files in a usable format, it would be too late." (Doc. 333, p 18) OTK's counsel admitted that Pledger had manually added pay rates in the 2018 Excel data and represented that Pledger had been instructed "that she should not be manually doing it because discovery, obviously, is not about

12

creating documents; it's about what data they have." (Doc. 333, Page 22) Sanctions, including default, were discussed at length. (Doc. 333, pp. 47-50)

OTK acknowledges the October 26, 2020 R&R. (OB p. 48, Doc. 261) It does not mention how the R&R described some of the past motion practice, described OTK's non-delegable record-keeping duties, and recognized that although discovery had closed the parties lacked information "necessary to fully understand" what OTK had produced. (Doc. 261, PageId 3274) The Magistrate Judge recognized her discretion, concluded that the problems stemmed from negligence, and recommended very substantial evidentiary sanctions. (Doc. 261, PageId 3725, 3728)

OTK also acknowledges the separate R&R entered February 4, 2021 that struck (again) the SOL defense but left other affirmative defenses for summary judgment resolution. (OB p. 49, Doc. 277) Hornady's pending summary judgment submission addressed all OTK's defenses. (Doc. 245)

Both parties "objected" to both R&Rs. (Docs. 266, 267, 282, 286) OTK's objections were limited. (Doc. 267, PageId 3512-3513) It began by

stating that the Magistrate Judge "had not had an opportunity to consider" the information OTK was providing. The only grounds OTK stated for its objections were: (a) ongoing communication efforts with ADP about a "truing up process" (compare Doc. 212); (b) ADP had provided a "report" and then had a telephone conference with OTK in November, 2020; and (c) Pledger needed "to correct her prior testimony" (from March 2020). (Doc. 267, PageId 3512)  OTK claimed her "inadvertent mistaken testimony" that it was still "unable to clarify" would "not change the reliability or accuracy of the pay records" it produced. (Doc. 267, PageId 3513)

The objections triggered the district court's *de novo* review. (Doc. 344, PageId 4632)  In the meanwhile, Hornady still did not have the discovery required by the June 2, 2020 Order. (Doc. 212)  In addition to the missing bonus documentation and additional deposition testimony, for some Plaintiffs OTK still had not produced any time or pay data. Hornady still did not have pay rata data for a substantial majority of the Plaintiffs, and Hornady did not have complete and accurate data for anyone. All of this was documented in June 2020. (See Doc. 238, PageId 2740, Doc. 238-2)  Trial was set in May 2021. (Doc. 274) As the district

court later commented even by April 13, 2021 "we're not in a place where we can go to trial." (Doc. 318, p. 3)

On February 4, 2021, the district court denied OTK's partial summary judgment motion (on the bonus issue) for "reasons set out in Plaintiff's submission." (Doc. 291, citing Doc. 260) That submission had pointed to Hornady's summary judgment arguments. (Doc. 260, PageId 3237, citing Docs. 180, 191) That motion was never ruled on because it was mooted by the default judgment.  (Doc. 344, PageId 4717)

On March 12, 2021, the district court summarized its view of the case status:

> I do have a real problem with a wage and hour trial that this far down the road we don't know what the wages and hours are.

(Doc. 303, p. 45)

The R&R and the objections stemmed from the June and August 2020 sanctions motions seeking default.  Those were fully briefed while Littler represented OTK.   (Docs. 267, 270, 283 PageId 3639 (OTK asserting "all pending motions has been fully briefed."))   The second show-cause hearing about the ADP subpoena was held March 12, 2021. The district court required OTK and ADP representatives to attend.

(Doc. 298, PageId 3687)   Pledger attended for OTK. (Doc. 303, p. 3) ADP's filing before that hearing showed that OTK had been informed, twice, that it could generate its own Excel files.  (Doc. 300-1, PageId 3807-3808, paras. 6, 8, 11-23) At the hearing, Mr. Appleby's *pro hac* admission was revoked.   Pledger promptly informed Dave Scheid of that development.   Scheid emailed Appleby March 13, 2021: "Is it true he threw you off the case?"  (Doc. 368-8, PageId 5947)

OTK did not terminate Littler's representation until April 21, 2021. (Docs. 319) While Littler continued to represent OTK, its lawyers worked with ADP about what data it had and did not have.  (Doc. 318, pp. 6, 11-12)  At an April 13, 2021 hearing, Hornady's counsel described what ADP had produced, and what ADP could not.  (Doc. 318, pp. 4-6, 14-16)  ADP's status report had also explained what information it had, and what it did not.  (Doc. 304, PageId 3944)

The District Judge was "loath" to enter default but saw no "other recourse." (Doc. 318, pp. 4-8)

That still left damages issues with missing data.  (Doc. 318, pp. 8-9) OTK's counsel explained that the time records OTK had into 2017 were in an "unwieldy computer file format" and OTK was trying to "identify

16

someone" who could get that data.  ADP's data had the step-up rates for the later years[5], but OTK was unable to provide step-up rate information for earlier years.  (Doc. 318, p. 14)

The district court's independent record review was comprehensive. OTK says Pledger was "not allowed" to explain her testimony citing to Docs. 328 and 329.  (OB p. 50)  Doc. 328 is a motion to submit a brief filed April 30, 2021 after OTK learned that the district court had requested transcripts of earlier audio-recorded proceedings. (Doc. 328) That motion was denied by docket entry. (Doc. 329)

OTK's motion did not ask to offer testimony by Pledger.  OTK had relied on Pledger's entire deposition in opposing Hornady's summary judgment submissions. (Doc. 206-2) Hornady filed her signed but otherwise blank errata sheet.  (Doc. 203-1)   The Littler attorneys had already disclosed that Pledger had altered Excel files and that her deposition testimony was "mistaken" in ways OTK could not "clarify." (Docs. 267, PageId 3512-3513, Doc. 333, p. 22)  Even with new counsel,

---

[5] Step-up rates are temporary, higher pay rates for employees who "step-up" to perform the job of another employee with a higher base pay rate.

17

OTK chose not to withdraw its summary judgment opposition, or any part of Pledger's deposition, and it did not file any testimonial correction.

As OTK says, one "part" of the November 2021 Order said that OTK had not rebutted "the substantive and substantial accusations it had doctored and produced false records" and did not explain at all why it had refused to produce records.  (OB p. 54)  The admissions of record that Pledger had altered Excel files have been discussed.  A review of OTK's filings shows that, in fact, it had not explained why significant parts of the court's discovery orders had not happened.  (Compare Docs. 212, 216, 238, 279, 280, 296 to Docs. 220, 242, 267, 295)

Detailed findings of bad faith, willfulness, violations of orders, specific misconduct, and the ineffectiveness of lesser sanctions are set out throughout the November 2021 Order.  (Doc 344, PageId 4627-4628, 4632-4635, 4638, 4649-4650, 4653-4654, 4658-4659, 4661, 4664, 4667, 4669-4670, fn 18, 4675-4677, 4685-4687, 4690, 4698, 4700, 4702, 4707, 4709, 4711)

### (ii) *November 18, 2021 – October 4, 2022 Events.*

At a hearing held December 15, 2021, OTK took the position that there were many issues left to adjudicate.  (Doc. 434, PageId 7846-7850, 7861-7864, 7871-7873)  The February 17, 2022, Order stated, in part:

… the Defendant raised questions concerning which claims of the TAC are to be taken as true.   The Court provides additional guidance here.

(Doc. 351, PageId 4733) And:

… Defendant questioned the sufficiency of the TAC, and more specifically certain allegations which were added as a result of the testimony of its Corporate Representative. That testimony was never fully investigated as a result of Defendant's refusal to participate in discovery, and more importantly was never amended by Defendant. The Court will not allow Defendant to benefit from its own misconduct. "Defendants rolled the dice on the district court's tolerance for deliberate obstruction, and they lost.  We have no intention of letting them return to the table." See *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 853- 854) (2d Cir. 1995)

(Doc. 351, PageId 4736)

OTK has described parts of its reconsideration filings.  (OB pp. 55, 67-70).  It says nothing about Hornady's response.  Hornady submitted substantial evidence showing that there were no grounds to reach a different result.  (Docs. 390-393) Some of that content was later reflected in the October 2022 Order.  (Doc. 409, PageId 6837, 6839-6840, 6843-6844)

Specifically, in Pledger's first Declaration she stated that Excel spreadsheets she prepared in 2020 for 225 plaintiffs included baseline rates of pay.  (Doc. 378, PageId 6047)  That was untrue.  The 2020

19

spreadsheets had no pay rates because Pledger disregarded Littler's instructions to include them. (See Doc. 393, PageId 6448-6451, 6456-6460) Her Supplemental Declaration substantively admitted that the first one was inaccurate, while disclaiming personal knowledge of content in both declarations.[6] (Doc. 389-1, paras. 6, 13-18, 23-29) At para. 15 Pledger described how she manually added pay rates to the 2018 Excel files. (Doc. 389-1, PageId 6231)

Between November 18, 2021 and October 4, 2022, the district court heard from OTK's lawyers at least six times about the default judgment in open court and via various filings with arguments, Declarations, Supplemental Declarations and assorted documents that OTK's personnel and a putative expert economist selected or created. (Docs. 368-369, 377-378, 389, 396-397, 402, 405, 434, 442) The district court allowed additional filings through OTK's Sur-Sur-Reply In Support of Motion to Reconsider. (Docs. 405)

---

[6] Even though the Supplemental Declaration described content that was wrong in the first Declaration, OTK filed it "without taking a position on and reserving all argument" about whether the first Declaration contained mis-statements and whether they were substantive. (Doc. 389)

The October 2022 Order sets out how OTK's submissions were considered, and the prior rulings reconsidered, and why the district court remained convinced that a default judgment was appropriate. (Doc. 409, PageId 6846)  It emphasized that OTK was sanctioned for its own conduct and not solely for Littler's.  (Doc. 409, PageId 6842-6845)  Its strong language included:

"Incredibly, Defendant appears to believe the Court's November 18, Order was in error because Defendant was not in violation of a discovery order." (Doc. 409, PageId 6834-36) (detailing why OTK's contentions were "simply not credible")

"Defendant's Motion to Reconsider pivots around this false, after the fact assertion" about the Excel productions Pledger had prepared. (Doc. 409, PageId 6836)

"It is, indeed, incredulous Defendant advanced the argument it was in compliance with the Court's discovery orders ... The Court is not mistaken." (Doc. 409, PageId 6839)

The selected emails OTK filed "only provide insight into a fraction of the circumstances leading to" the November 2021 Order and said

21

nothing about events during the first 26 months of the case.  (Doc. 409, PageId 6842, 6843)

b.    *The TAC alleged facts plausibly entitling Hornady to relief.*

The first and fifth of the subparts of OTK's Statement of the Facts touch on content relating to the TAC's allegations. The following procedural facts relate to those issues.

### (i) Bonuses.

The TAC alleged that bonuses earned over a calendar month, but paid a month later, were not included in "regular rates" for overtime pay under 29 U.S.C. § 207(e) and did not fall within any statutory exclusion. (Doc. 223, PageId 2653-2655) The bonus claim was described in the early complaints.  (Doc. 5, paras. 19, 36; Doc. 21, paras 21, 38).  It was described in filings before an October 25, 2018 Scheduling Order.  (Docs. 47, 58, 59, 61) That Order required sworn statements if OTK disputed Hornady's contentions about the bonuses.  (Doc. 64, paras 3d and 3e) In a joint report, OTK asserted that it calculated bonuses lawfully and the parties proposed that Phase One discovery cover "Bonus Methodology." (Doc. 83, pp. 2-3) The resulting Order did so.  (Doc. 91, p. 3)   Hornady's pursuit of

discovery on the bonus issue was described in a March 9, 2020 submission. (Doc. 180)

### (ii) Designated Week.

The April 2019 Order designated for discovery: "What day and time of the week defendant designated as the workweek." (Doc. 91, PageId 561) After additional discovery, the TAC alleged that OTK designated a Monday – Sunday pay week on all its pay records until January 27, 2019, and then that OTK designated a Sunday – Saturday week starting January 27, 2019 – but that OTK did not calculate how much overtime was worked using those designated 168-hour pay periods. (Doc. 223, PageId 2645-2647) The claim was not new but the TAC incorporated Pledger's deposition testimony that in January 2019 she had changed the pay period dates in OTK's systems in response to the lawsuit. (Doc. 223, PageId 2646) Hornady's summary judgment submissions presented the evidence that aligned with those allegations. (Doc. 246, PageId 3077-3080).

### c.    Damages Quantifications.

After default was entered as to liability Hornady was required to prepare, serve, and file exemplar damages calculations, along with a

written description of a proposed methodology. (Docs. 348, 356-360, 362) OTK filed its objections. (Docs 354, 363) A hearing was held March 4, 2022 and the district court explained that its rulings should make for "simple but not easy" damages calculations. (Doc. 442, PageId 7983) A March 8, 2022 Order documented rulings on the objections. (Doc. 366) One of OTK's objections that was sustained is addressed below in connection with the cross-appeal.

A status conference was held August 9, 2022 to discuss finalizing the damages submissions, including a discussion about draft damages presentations, and substantive argument from the parties. (Doc. 435)

On August 30, 2022, the parties made a court ordered joint submission about damages. (Docs. 406 and 407) It set out areas of stipulation and disagreement. There was no dispute about what data was used, or that the "mechanical calculations" were accurately performed. (Doc. 406, PageId 6626-6627) Within that joint submission about damages OTK argued that its liability should be reduced by about $340,000 for payments it made in March and April, 2022 (it had presented similar arguments on August 9, 2022). (Doc. 435, PageId 7883-7888; Doc. 406, PageId 6640) OTK described how it calculated those

amounts. Hornady assumed *arguendo* that the calculations were described accurately but laid out eight reasons that those payments could not reduce OTK's FLSA obligations. Those reasons included: (a) the amounts were not approved by the district court as part of any settlement, (b) the amounts were not calculated in accord with weekly FLSA accounting concepts, and (c) OTK had expressly represented that it was "not obligated" to make payments. (Doc. 406, PageId 6643-6647) The district court did not reduce the damages due Hornady because the payments did not appear to comply with the court-ordered methodology. (Doc. 410, fn. 2)

### 2. Cross-Appeal Statement of Facts

Both the TAC and the First Amended Complaint presented collective claims of FLSA violations dating back to July 30, 2015, and equitable tolling. (Doc. 5, pp. 11-13; Doc. 223, paras. 11, 16.5, 18 (with subparts) 25, 30 and the Wherefore clause)

In the parties' February - March 2022 submissions about a mathematical calculation methodology OTK's Objection 4 took aim at FLSA damages starting July – August 2015 for plaintiffs who opted-in in 2019. (See Doc. 363, PageId 5640-5645) OTK's objection was based on

the SOL in 29 U.S.C. § 255(a). (Doc. 363 PageId 5640). Hornady responded that limiting damages based on a SOL first required a SOL defense. (Doc. 360 PageId 5602) The Magistrate Judge had struck the SOL defense twice and the district court had struck OTK's Answer. (Doc 108 Page 630, Doc. 277 PageId 3571, Doc. 344 PageId 4717)

The district court sustained OTK's Objection No. 4. (Doc. 366 PageId 5662)

While acknowledging that ruling, in the August 2022 damages submission Hornady also presented the alternate calculations for damages if Objection 4 was not sustained. Applying the SOL reduced the collective's FLSA damages by $3,705,908.52 and 22 people who timely opted-in were awarded nothing under the FLSA. (See Docs. 406, 407-10 columns F and N)

A few earlier procedural facts frame a contingent due process issue. In addition to the allegations of the First Amended Complaint, equitable tolling was first sought by motion August 31, 2018 when Hornady also sought conditional certification. (Docs. 22, 23) At the time, OTK said it would oppose conditional certification, but it never did. (Doc. 63, p. 2) OTK urged the court to delay notice while it produced some time and pay

26

records so that the parties could "try to get this thing resolved." (Doc. 344, PageId 4661)

The conditional certification Order (with notice provisions) was entered May 30, 2019. (Doc. 93) In the same Order the district court stated that a merits ruling on tolling was premature and that before addressing the merits: "The parties may supplement their filed motion after the opt-in period ends with a deadline to be set by the supplemental scheduling order." (Doc. 93, PageId 571-572)

On July 12, 2019, the Magistrate Judge struck defenses including the SOL as a sanction. (Doc. 108)

Hornady filed a renewed tolling motion on May 19, 2020. It discussed how to address individualized issues. (Doc. 204, PageId 2152-2153) A June 29, 2020 Order reiterated that the motion was stayed. (Doc. 221) OTK reasserted the struck SOL defense in its Answer to the TAC. (Doc. 228, PageId 2689)

There were no other related filings before the February 3, 2021 Order stated that the tolling motion was "ripe for review" and denied it. (Doc. 276) The next day the Magistrate Judge ruled on Hornady's August 2020 motion (Doc. 233) and struck the SOL defense again. (Doc. 277)

27

Hornady described this chronology in a motion to alter, amend etc. which was denied.  (Docs 281, 292)

A year later, the district court "sustained" OTK's Objection 4 based on the SOL and the Final Judgment applied that ruling. (Doc. 366, PageId 5662, Doc. 406)

**C. Standards of Review.**

Findings of fact are upheld unless clearly erroneous.  *Media Services Group v. Bay Cities Communications, Inc.*, 237 F.3d 1326, 1329 (11th Cir. 2001); *Godfrey v. BellSouth Telecommunications, Inc.,* 89 F.3d 755, 757 (11th Cir. 1996) Factual determinations ground the district court's ultimate determinations that (a) its Orders were violated, (b) by OTK itself, (c) willfully and in bad faith, and (d) lesser sanctions than a default judgment were insufficient. There are subsidiary factual determinations like (e) OTK's declarants and deponents provided false statements, (f) documents were doctored, (g) OTK was capable of producing data and records it did not produce, and (h) some misconduct was irremediable.

OTK does not dispute that its own conduct was sanctionable, and it does not dispute that its former counsel's conduct was sanctionable.  The

review of a district court's applies an abuse of discretion standard. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 55 (1991) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 633 (1962)); *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 399–405, (1990) (Rule 11)); *In re Sunshine Stores, Inc.*, 456 F. 3d 1291, 1304 (11th Cir. 2006) Review is "sharply limited to a search for abuse of discretion and a determination that the findings of the trial court are 'fully supported by the record.'" *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642-643 (1976); *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1447 (11th Cir. 1985) (citing *NHL)*, *Aztec Steel Co. v. Florida Steel Corp.,* 691 F.2d 480, 482 (11th Cir.1982) (*per curiam*), *cert. denied,* 460 U.S. 1040 (1983)

What sort of content the district court can consider (like attorney misconduct, and remediable / irremediable violations) in deciding what sanction is appropriate is a question of law reviewed *de novo.*

Whether factual allegations describe a plausible claim of entitlement to relief is a question of law reviewed *de novo.* The pure legal issues for cross-appeal are also reviewed *de novo.*

Whether "detailed affidavits" are mandatory before quantifying a judgment based on mathematical calculations is similarly reviewed *de*

29

*novo.* Any evidentiary rulings about those mathematical calculations, however, are subject to an abuse of discretion standard as "questions involving multifarious … narrow facts that resist generalization." *United States v. Shamsid-Deen*, 61 F. 4th 935, 943 (11th Cir. 2023) (quoting *Cooter & Gell*, 496 U.S. at 404), see also *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141–42, (1997) (citing *Old Chief v. United States,* 519 U.S. 172, 174 n. 1, (1997))

OTK does not mention "due process" in the Issues it identifies. It did not describe any standard of review for "due process" issues, but the phrase appears in its Argument. If it falls to Hornady to propose a standard, then Hornady submits that an abuse of discretion standard applies. In civil litigation, the due process requirements of a sufficient opportunity to be heard are "flexible" and vary by case-specific circumstances. *In re McLean*, 794 F.3d 1313, 1324 (11th Cir. 2015); *Mercer v. Mitchell,* 908 F.2d 763, 769 n. 11 (11th Cir. 1990). Decisions involving a range of choices are the sort of decisions that are suited for an abuse of discretion review standard. *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004)

## IV.   Summary of the Argument

### A. Appeal.

Once a district court makes findings about willful, bad faith, violations of discovery orders and associated litigation misconduct intended to disrupt and delay litigation, then one of the available sanctions is entry of default judgment.  The only other requirement is that the district court consider lesser sanctions.  The district court made those findings.  Twice.  Under this Court's standards of review there is no merit to OTK's argument that the district court abused its discretion.

OTK was sanctioned for its own misconduct as well as for misrepresentations one of its attorneys made while trying to ward off sanctions for OTK's misconduct.  The separate and additional misconduct of its counsel does not entitle OTK to lesser sanctions.  Nor does it entitle OTK to even more opportunities to file briefs, rehash arguments, etc. than it already had.

On reconsideration, the district court considered all that OTK filed.  Some of it was false.  The district court re-affirmed its prior determinations about entering default judgment.  Its determinations meet every possible standard for declining to change a ruling after

31

reconsideration. But also, OTK's position was that the district court had total discretion in reconsidering an interlocutory order. Having taken that position, OTK is estopped from arguing now that that the district court exceeded what OTK said was infinite discretion.

What this case was about long before any misrepresentation by OTK's counsel was when the trial court's patience would run out. (See Doc. 351, PageId 4736) The Magistrate and District Judges spent immense judicial time re-tracing why the litigation was so far off course. The district court concluded that OTK's serial violations of court Orders were willful deviations from court-ordered obligations rather than inadvertent missteps. From there, the severe sanction of default judgment was appropriate. There was no abuse of discretion.

OTK's arguments about whether the TAC's allegations state facts which plausibly entitle Hornady to relief are resolved by Fed. R. Civ. P. 8, the FLSA text, and the legal authorities describing FLSA violations.

OTK's argument that detailed affidavits were required even though damages were quantified based on mathematical calculations is inconsistent with this Court's precedent.

OTK makes some other scattered contentions in brief. None have merit. Hornady has focused on the "Issues" OTK identifies, and those reflected as "Argument" sections, but has tried to cover OTK's other comments in an organized way.

## B. Cross-Appeal.

One way OTK benefitted from the procedural mess it created is that the district court reduced damages based on a SOL defense that was struck. The application of an affirmative defense that does not exist is reversible error. The net result was that collective members recovered $3,705,908.52 less under the FLSA than they are entitled to, and 22 of them received nothing under the FLSA. (Docs, 406, 407-10, columns F and N)

When OTK reincarnated the SOL defense that had been killed off thrice it did so by re-characterizing an earlier equitable tolling ruling. Once there was no SOL defense, there was nothing to toll. As a contingent matter, the procedural history up until the tolling ruling cannot be reconciled with even flexible, case-specific due process requirements.

# V.    Argument (Appeal)

## A. Introduction.

> "Our job is to win for our side.  We aren't out to do justice; that's the judge's job."

> "Discovery is a business.  How long can I pay these attorneys to avoid the outcome of the case becomes the businessman's question today."

> Regarding discovery, "[n]ever be candid and never helpful and make [your] opponent fight for everything."

This Court included those quotations from Wayne D. Brazil, *Views From the Front Lines,* 1980 AM.B.FOUND.RES.J. 217 (1980) in footnote 9 of *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1547 (11th Cir. 1993). Hornady begins with *Malautea v. Suzuki* partly because this Court affirmed the sanction of default judgment, which should be the result here.  But mostly Hornady begins with those quotes because they powerfully illustrate the attitudes that led the parties to this juncture.

*Malautea v. Suzuki* is one of a disconcerting number of opinions that authorize severe sanctions for serious misconduct. Those rulings dissuade some litigants from misconduct. Others, like OTK, are undeterred.  The district court justifiably reached its breaking point.  It is due to be affirmed and there is no basis to do anything else.

34

## B. The district court had discretion to enter default judgment.

1. Case Law.

This Court "will not interfere" with sanctions, no matter how severe, unless "important historical findings are clearly erroneous" or there is an abuse of discretion. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F. 3d 1298, 1306 (11th Cir. 2009) (citing *Sunshine* 456 F. 3d, at 1306 which quoted *Jaffe v. Grant,* 793 F.2d 1182, 1189 (11th Cir.1986)).

Default judgment was entered under both inherent judicial powers and Rule 37. (Doc. 344, PageId 4654, Doc. 409, PageId 6832) Once there are bad faith findings, the courts' inherent power to sanction parties (and lawyers) includes the discretion to enter default judgments. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 51 (1991); *Eagle Hosp.,* 561 F. 3d at 1303-1304 (11th Cir. 2009); *Sunshine,* 456 F. 3d at 1304; *Byrne v. Nexhat*, 261 F. 3d 1075, 1121 (11th Cir. 2001) (quoting *Barnes v. Dalton*, 158 F. 3d 1212, 1214 (11th Cir. 1998)) abrogated on other grounds by *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)

OTK does not dispute that its conduct was sanctionable. Instead, it disputes the sanction chosen by the district court. OTK's appellate

argument overlooks both this Court's precedents and what the district court stated in its Orders. The district court described "clear and convincing evidence" that OTK "acted in bad faith when it violated numerous discovery orders and failed its obligations in every respect to produce accurate and complete time records" which disrupted and delayed the litigation, along with a laundry list of other failings. (Doc. 344, PageId 4639, 4649, 4659, and 4660-4706, see Doc. 409, Page Id. 6825, 6837, 6843) It described how lesser sanctions had already been inadequate to motivate compliance and would not suffice. (Doc. 344, PageId 4710-4715, Doc. 409, PageId 6833-6834)

"Twin findings" of "willful bad faith conduct that cannot be deterred by lesser sanctions" will support affirming a default judgment under the abuse of discretion standard. *Rasmussen v. Cent. Fla. Council Boy Scouts of Am., Inc.*, 412 F. App'x 230, 232 (11th Cir. 2011) (citing *Malautea*, 987 F. 2d at 1542)

Delaying or disrupting litigation is one way to show bad faith. *Eagle Hosp.,* 561 F. 3d at 1306; *Sunshine*, 456 F. 3d at 1304. Bad faith failures (and "flagrant disregard" or "willful disobedience" of orders) all carry the same range of potential sanctions under Rule 37. *NHL*, 427 U.S. at 640

(1976); *Thornton v. Hospitality Management, Assoc., Inc.*, 787 Fed. Appx. 634, 638-639 (11th Cir. 2019); *Rasmussen,* 412 Fed Appx. at 232; *Malautea*, 987 F.2d at 1542 (11th Cir. 1993).

Policy preferences for merits adjudications "yield" when a party intentionally prevents a fair adjudication. *Carlucci v. Piper Aircraft Corp.*, 102 F.R.D. 472, 486 (S.D. Fla. 1984) "[A] history of bad faith stonewalling" justifies a forfeit of the opportunity to dispute liability because it shows that lesser sanctions are insufficient to force compliance. *Sunshine*, 456 F. 3d at 1306.

When a district court cites multiple sources of authority for entering default judgment this Court's basic task when applying an abuse of discretion standard is to determine whether the sanctions were allowed under at least one source of authority. *Amlong & Amlong, P.A. v. Denny's, Inc.,* 500 F.3d 1230, 1238 (11th Cir. 2007) (citing *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1365 (11th Cir. 1997)) If so, it "must affirm." *Amlong*, 500 F. 3d at 1238.

In general, to reverse a judgment based on multiple, independent grounds an appellant must convince this Court that "every stated ground for the judgment against him is incorrect." *Thomas v. Clayton Cnty. Bd.*

*of Commissioners*, 2023 WL 1487766, at *3 (11th Cir. Feb. 3, 2023); *Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 680 (11th Cir. 2014). The district court made many explicit findings about various ways OTK violated various orders and conducted itself in bad faith for years. As a starting point, OTK would have to show that every one of those determinations was clear error. It has not attempted that impossible task.

Appellate review for abuse of discretion recognizes the "range of possible conclusions the trial judge may reach." *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (citing *Maiz v. Virani,* 253 F.3d 641, 662 (11th Cir. 2001)) *Frazier* involved evidentiary decisions, but the same standard applies to sanctions decisions (both those imposing the most severe sanctions and those declining to do so). See *Absolute Activist Value Master Fund Ltd. v. Devine*, 826 F. App'x 876, 879 (11th Cir. 2020); *Olivas v. A Little Havana Check Cash, Inc.*, 324 Fed. Appx 839 (11th Cir. 2009); *Ross v. M/Y ANDREA ARAS,* 278 Fed App'x 988, 990 (11th Cir. 2008); *Eades v. Alabama Dep't of Hum. Res.*, 298 F. App'x 862, 863 (11th Cir. 2008)

OTK implies that the amount of the judgment (i.e. a severity factor) is a basis to reverse. *NHL* disposes of that argument. In *NHL,* the district court dismissed a complaint for "flagrant bad faith, willful or intentional" failure to timely answer interrogatories. This Court reversed, and the Supreme Court reinstated the district court's determination because it had considered the full record in deciding that dismissal was appropriate. *NHL*, 427 U.S. at 641-642 (citing *Link*, 370 U.S. at 633-634) Even though there might be a "natural tendency" to assume that after a dismissal order is reversed the chastened, culpable party with start complying with court orders "the most severe in the spectrum of sanctions" "must be available in appropriate cases" to penalize culpable parties, but also "to deter those who might be tempted" towards misconduct. *NHL*, 427 U.S. at 642–43. *See also Eagle Hosp.*, 561 F. 3d at 1306 (relying on *Byrne*, 261 F. 3d at 1103 which quoted *United States v. Sigma Int'l, Inc.*, 244 F. 3d 841, 852 (11th Cir. 2001), *Sunshine*, 456 F. 3d 1291 at 1305-1306 (11th Cir. 2006); *Jaffe v. Grant*, 793 F. 2d 1182, 1189 (11th Cir. 1986) (quoting *Marshall v. Segona*, 621 F. 2d 763, 767 (5th Cir. 1980); *Aztec Steel Co. v. Florida Steel Corp.*, 691 F. 2d 480, 481-482 (11th Cir. 1982)

Those same cases illustrate how the abuse of discretion standard acknowledges that the district court is well positioned to evaluate the likelihood of future compliance by the litigant and the deterrent effect of various possible sanctions. That is dispositive of OTK's implicit contention that the district court (and now this Court) must accept its protestations about past good faith and hypothetical future compliance, and then set aside default. There is no such precedent.

Parties may be sanctioned for their misconduct. Or their counsel's. *Link,* 370 U.S. at 633–34. When OTK says its appeal is not about "excusing" its counsel's failings; it is glossing over one of many reasons to affirm. (See, OB Page 37)  There is "no merit" to any argument that dismissal of a claim because of counsel's conduct imposes an "unjust penalty" on a litigant. *Link,* 370 U.S. at 633–34; *see also Eades,* 298 F. App'x at 864. There are some exceptions to "the rule that the sins of the lawyer are visited on the client" but they apply when the party itself has not committed sanctionable misconduct and / or the attorney's misconduct is unrelated. *In re Porto*, 645 F. 3d 1294, 1304 (11th Cir. 2011) (*abrogated in part on other grounds by Ray Haluch Gravel Co. v.*

*Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps.*, 571 U.S. 177 (2014))

Even for the subset of sanctionable misconduct here that was attributable to OTK's counsel, the general rule is that there is no abuse of discretion when parties are charged with "the consequences of the acts or omissions of (their) freely selected agent" because it can be "grossly inequitable" to impose the "sins" of an attorney on the adverse party rather than on the attorney's client. See *Jochum v. Schmidt*, 570 F.2d 1229, 1232 (5th Cir. 1978) (quoting *Link*, 370 U.S. at 633-634)

On reconsideration, the district court rejected OTK's attempts to blame its own misconduct on its counsel. (See Doc. 409, PageId 6844).  It had detailed years of misconduct by OTK and noted that OTK's submissions addressed only a fraction of the findings and ignored the first 26 months of its sanctionable conduct. (Doc. 409, PageId 6843)  If counter-factually, the district court had entered default solely for Littler's misrepresentations about the ADP subpoena it would still have to be affirmed.  Its Orders, however, describe years of sanctionable misconduct by OTK before any misrepresentation of counsel, and explicitly stated

41

that OTK was being sanctioned for its own misconduct. (See Doc. 344, passim; Doc. 409, PageId 6842-6844)

2. <u>The November 18, 2021 Order.</u>

Hornady now turns to the findings in the November 2021 Order (a) relating to bad faith and violations of discovery Orders, and (b) that lesser sanctions would not suffice. It is difficult to find any part of the Order that does not have content worth citing as a basis to affirm.

OTK argues about the findings about some of its misconduct but it leaves many findings uncontested, which may dramatically abbreviate this Court's review task. *Sapuppo*, 739 F.3d at 680. The limited findings that OTK directly protests are supported in the record and in most cases the district court's orders contain direct record cites. Significant findings include:

1. OTK "refused to produce complete and accurate records and misrepresented ... material facts surrounding its refusals." (Doc. 344, PageId 4627)

2. 12 Orders were entered, 11 discovery conferences and motion hearings were held focusing for the most part on record production. (Doc. 344, PageId 4633, 4658)

42

3. OTK "dishonored" its "representations" about cooperating with discovery and complying with court orders in a pattern "that poisoned the entirety of this case" and which was clearly "deliberate and in bad faith."   (Doc. 344, PageId 4633-4634)

4. "ADP's evidence squarely belied Defendant's repeated representations ... that ADP had failed to respond to the subpoena ..." (Doc. 344, PageId 4635, *see also* 4648)

5.
> Defendant did not rebut the substantive, and substantial accusations, it had doctored and produced false records.  Likewise, Defendant did not explain at all, why it had refused to produce records it had previously agreed to provide…. in response to sanctions, twice, Defendant abdicated, dodged and misconstrued its responsibility for its own failures.

(Doc. 344, PageId 4648-4649)

6. OTK's "'keystone' time and pay records" were missing for the entire case which had "languished for more than three years." (Doc. 344, PageId 4653)

7. OTK "immediately dishonored" representations made at the October 9, 2019 Scheduling Conference and then "spent the next several years violating discovery Orders and misrepresenting its efforts to produce 'linchpin' documents." (Doc. 344, PageId 4661)

43

8. OTK produced "inaccurate verified time and pay records" for Hornady's use compiling damages for unsuccessful early settlement negotiations. (Doc. 344, PageId 4664)

9. From July 12, 2019 - March 2021 OTK used "tactics" that "were subversive" and behavior that was "manipulative, intentionally designed to undermine the Court's orders and authority ..." (Doc. 344, PageId 4667)

10. Pledger testified that OTK knew its January, 2019 discovery responses were false. (Doc. 344, PageId 4669, n. 18) Her testimony "revealed Defendant created and produced inaccurate pay records leaving Plaintiff to discover these inaccuracies ..." and that black and white time records "were meaningless." (Doc. 344, PageId 4676-4677)

11. OTK's "exploitation" of Pledger was "deeply troubling and additional evidence of its pervasive and intentional misconduct." (Doc. 344, PageId 4702)

12. As of September 2019 OTK was "flaunting Court orders and the Federal Rules of Civil Procedure." (Doc. 344, PageId 4670)

44

13.  Regarding monthly incentive bonus data: "nine months after the last order had been entered [Doc. 212] to produce these records" OTK had not produced the data and "never offered an explanation for its serial violations of Court's orders." (Doc. 344, PageId 4685)

14.  After stipulating to the June 2, 2020 Order, "to remedy Defendant's various failures, obfuscations and delays" OTK "flouted that order." (Doc. 344, PageId 4686)

15.  "Defendant's bad faith culminated in its deceitful attempt to blame ADP for its failure to produce subpoenaed records." (Doc. 344, PageId 4687) That subpoena was issued "**in lieu of further sanctions against** [OTK], and following [OTK's] creation and production of inaccurate and incomplete pay and time records." OTK "undermined its own solution." (Doc. 344, PageId 4690, emphasis in original)

16.  OTK "intentionally concealed ADP's response to the subpoena in an attempt to divert blame, and sanctions, from itself to ADP." (Doc. 344, PageId 4698)

45

17.    OTK "failed to produce its records in Excel format as it **was able and ordered** to do." (Doc. 344, PageId 4700 emphasis in original) Separately, ADP later confirmed that it could have produced Excel data if it had been asked by OTK but "that would have required Defendant's good faith. Defendant had none." (Doc. 344, Page ID. 4700)

18.    "This is not the first time Defendant's subversive and undermining tactics resulted in a defense judgment against it." (Doc. 344, PageId 4707) Its:

> Vice President and its longtime counsel have been privy to similar misconduct and sanctions before.  There has been willful contempt here.  The numerous orders and violations in the record cannot 'understandably have escaped' Defendant's attention.  Defendant is responsible for the bad faith which permeates the entirety of this record.

 (Doc. 344, PageId 4709)

19.    "... there is a clear and convincing evidence Defendant acted in pervasive bad faith throughout this entire case." (Doc. 344, PageId 4711)

20.    After citing *Malautea v. Suzuki* as guidance for harsh sanctions after "an unrelenting campaign to obfuscate the truth"

46

and reiterating OTK's "pervasive bad faith" since 2018 the district court stated there was "no compelling reason to impose ... sanctions less severe than a default judgment" because OTK's "proclivities for misconduct are not isolated mistakes which can be remedied through yet another lesser sanction." (Doc. 344, PageId 4710-4712): "The policy of resolving lawsuits on their merits must yield when a party has intentionally prevented the fair adjudication of the case." OTK's "deceitful, subversive, and manipulative conduct" was just as detrimental as deliberate destruction of documents and, given its bad faith stonewalling, it "forfeited its opportunity to dispute" liability. (Doc. 344, PageId 4712, citing *Carlucci*, 102 F.R.D. at 486 and *Sunshine*, 456 F. 3d at 1306)

21. OTK's "corruption of the discovery process resulted in significant litigation delays" and "soundly defeated the goals of the collective action process." "[T]he prejudice caused to Plaintiffs" included that it was "impossible" to fully comprehend what was paid incorrectly and "impossible" for Hornady to comply with Orders requiring damages approximations. (Doc.

47

344, PageId 4713-4714) "'[T]he adjudication of Plaintiff's claims on the merits has been delayed and ultimately thwarted." (Doc. 344, PageId 4714) And, quoting *NHL*, severe sanctions do not merely penalize culpable litigants they "deter those who might be tempted to such conduct." (Doc. 344, PageId 4715)

All, and perhaps any, of those conclusions establish that the district court did not abuse its discretion when it entered a default judgment November 18, 2021.

3. <u>The October 4, 2022 Order.</u>

The October 2022 Order incorporated by explicit reference "the procedural history" from the November 2021 Order and recapped the bad faith findings. (Doc. 409, PageId 6825) The district court addressed OTK's arguments for reconsideration then elaborated on, and reiterated, its findings. It:

1. Rejected OTK's contentions that (a) it had not violated discovery Orders; (b) any violations or bad faith conduct were solely the lawyers' fault; (c) lesser sanctions would suffice; (d) OTK did not have and could not procure relevant records; and (e) "late production of incomplete time and pay records cures any

48

sanctionable conduct." (Doc. 409, PageId 6832)  It rejected those arguments because they "do not accurately reflect the procedural posture of this action and are based on a significant misunderstanding of" OTK's discovery obligations and failures. (Doc. 409, PageId 6832-6833)

2.    Described how OTK's argument for lesser sanctions (a) "conveniently" ignored that the November 2021 Order modified sanctions in a R&R entered after discovery closed, and that post-R&R there was "additional sanction-worthy behavior;" and (b) ignored that the November 2021 Order described why lesser sanctions were insufficient. "**The court need not reconsider this aspect of its decision; however, now that it has, the Court remains convinced of the propriety of its decisions**." (Doc. 409, PageId 6833-6834, emphasis added)

3.    Described with incredulity OTK's belief that it "was not in violation of a discovery order." (Doc. 409, PageId 6834)

4.    Rejected OTK's "incorrect" factual assertions that:

-    "Death penalty" sanctions were entered "largely" because of its attorneys' representations that "OTK had never

49

produced time and pay records to Plaintiffs in discovery" and about the subpoena;

- OTK was "completely unaware" its production was unsatisfactory until March 8, 2021;

- There was no Order specifying conduct for OTK; and

- "Most of the discovery disputes" arose from failures to produce "true up" payment records about "step up" rates.

(Doc. 409, PageId 6834-6835)

5.    Reiterated that the reasons OTK was sanctioned included failures to produce complete / accurate linchpin records, which were the subject of 12 Orders.  (Doc. 409, PageId 6836)

6.    Described OTK's arguments "as misguided" and "mistaken."

7.    Set out how the OTK Declarations contained "false, after-the-fact assertion[s]" about what OTK produced and when, and that OTK "knew it agreed (and was ordered to produce)" Excel formatted pay records with pay rates.  (Doc. 409, PageId 6837)

8.    Stated: "it is indeed, incredulous Defendant advanced the argument it was in compliance with the Court's discovery orders .... The Court is not mistaken." (Doc. 409, PageId 6838)  OTK's

50

"suggestion" that discovery Orders were not violated "is without merit." (Id.)

9.    Explained that OTK's argument that it was sanctioned because ADP had "RROP" information that OTK could not access ignored that this was not OTK's "primary failing" and was only part of what OTK was ordered to produce. (Doc. 409, PageId 6840)

10.    Recognized that OTK was conflating what it was required to produce with different data and reiterated how OTK had violated Orders. "The Court, however, is not confused." (Doc. 409, PageId 6840-6841)

11.    Addressed a series of emails OTK had filed which "only provide insight into a fraction of the circumstances leading to the Court's November 18 Order" and said nothing "about OTK's discovery obligations" during the first 26 or so months of the case. (Doc. 409, PageId 6843)

12.    Concluded that OTK's filings did not "undermine" the district court's conclusions about OTK's bad faith and that OTK's motion

added "nothing to convince the Court" that it was an innocent victim of its lawyers. (Doc. 409, PageId 6843-6844)

13.    Rejected OTK's suggestion that ADP's production of some Excel data cured OTK's default. "The Court is not impressed." (Doc. 409, PageId 6844-6845) (noting that ADP's production was 7 months after discovery closed and that long overdue production is not a cure).

Again all, and perhaps any, of those conclusions establish that the October 4, 2022 default judgment is due to be affirmed under the abuse of discretion standard.

Section B of OTK's Argument is a somewhat overlapping critique of the procedure that led to the October 2022 Order. Again, OTK's positions find no support in the procedural facts, or the law.

 OTK complains that the district court did not apply a "good cause" standard under Fed. R. Civ. P. 55(c) while also insisting that it "actually met" the Rule 54(b) standard of "clear error and manifest injustice." (OB pp. 34, 66) The district court's explicit findings are 100% contrary to OTK's assertion. It noted that OTK invoked both Fed. R. Civ. P. 54(b) and Rule 55(c), which have different standards of review. (Doc. 409,

PageId 6827, 6831) It explained why the arguments OTK made were not reasons to alter the result, and it described the opposite of "good cause." Instead, as detailed above, it reaffirmed its decision and explained it by discussing the false content OTK had submitted and OTK's "not credible" contentions, "incredulous" arguments, etc.

Separately, OTK waived any argument that its motion to reconsider was subject to anything less than a totally discretionary review by the district court. It did so by telling the district court it could change its decision "for any reason" - a much lower standard than any good cause variant.[7] (Doc. 369, PageId 5971) Whether the legal position OTK urged was right or wrong, it is bound by it.

The substantive argument OTK is actually making now is that the district court was required to apply a "good cause" standard under Rule 55(c) that OTK did not lobby for, and that it was also required to believe OTK's claims, accept them as "good cause," and set aside the default

---

[7] OTK also argued that the default could be reconsidered on any ground for relief under Rule 60(b). The district court agreed. (See Doc. 369, PageId 5971, Doc. 409, PageId 6828) Rule 60(b) grounds include "any other reason that justifies relief." The October 2022 Order did not identify any reason for relief. It reached the opposite conclusion.

judgment. These arguments, again, are unsupported by any legal authority.[8] Even when a district court finds good cause Rule 55(c) is permissive rather than mandatory: "a court may set aside the entry of default for good cause."

The district court rejected all the reasons OTK rehashes to this Court as supposed "good cause." Instead, it explained (again) why it was convinced that default judgment was appropriate. That discretionary decision should be affirmed.

4. OTK's miscellaneous contentions that touch on discretion to enter default.

The above discussion addresses everything OTK presents as organized argument about the default judgment sanction. Hornady will also address the other contentions from OTK's Summary of the Argument and its Argument.

---

[8] OTK argues that a "good cause" standard includes considerations like whether there was culpable or willful conduct, prejudice to the adverse party, the existence of meritorious defenses, and policies favoring merits determinations. (OB pp. 75-76) If that is so, the district court's Orders emphasized why the first two considerations justified entering default. Hornady submits that the other two factors do not apply in this context. Striking non-meritorious defenses is not a sanction, and a policy preference for merits adjudications is always outweighed by contrary considerations whenever there is a dismissal or default judgment.

OTK argues that "after noting that default sanctions flowed from the misrepresentations of" OTK's former attorneys the district court "refused to consider any evidence developed through new, non-conflicted counsel." (OB p. 61) The October 2022 Order explicitly refutes those assertions. (Doc. 409, PageId 6836-6846)

OTK argues "evidence developed through new counsel showed that it was impossible at the time to produce data in the precise form" Hornady requested. (OB p. 61) OTK cites *Searock v. Stripling*, 736 F. 2d 650, 653 (11th Cir. 1984).[9]  The October 2022 Order set out how OTK's "new evidence" actually showed that OTK could have produced the pay rate data in Excel, (and commented on OTK's similar efforts to conflate the data types at issue). (Doc. 409, PageId 6838-6841)

---

[9] The only evidence in *Searock* was an un-contradicted representation about subjective good faith. 736 F. 2d, at 654.  That does not resemble the facts here.  Furthermore, as the district court recognized OTK's FLSA record maintenance duties cannot be delegated.  (Doc. 344, PageId 4648 citing *Kuebel v. Black & Decker, Inc.*, 643 F. 3d 352, 363 (2nd Cir. 2011)) Again, *Searock* bears no resemblance. Last, OTK cites *Searock* for the proposition that an inability to comply with discovery "standing alone" cannot support a default sanction (OB p. 65) but what OTK inaccurately claims it could not produce was one of many violations triggering sanctions.

OTK argues that Hornady received the records that prompted sanctions.  (OB p. 62)  What was never produced included step-up pay rates (before August 2017), colorized records of what time was both authorized and paid for (except for records for about 10 people starting in August 2017), incentive bonus documents, and information about late "trued up" payments.  (See Doc. 212) The district court set out in a section captioned "Spoliation of Time and Pay Records" various ways that specific pay information remained unavailable. (Doc. 344, PageId 4702-4707, see also 4686, 4713-4714)

Each of those arguments is presented by OTK without record citation and the record contradicts each assertion.  OTK's burden is to show that each of the district court's findings that underlie its core conclusions is clearly erroneous.  It does not try to carry that burden, and the record establishes the opposite conclusion.

OTK argues that severe sanctions have due process implications. (OB p. 64) It never describes how it was supposedly deprived of an opportunity to be heard when the record (and the October 2022 Order) show all of its voluminous submissions that the district court considered

and reconsidered. (See Docs. 368-369, 377-378, 389, 396-397, 402, 405, 434, 442)

OTK says that courts must find subjective bad faith. (OB p. 64) The district court did. (See Doc. 344, PageId 4640, 4649, 4659, 4667, 4687, 4702. 4709, 4712, Doc. 409 PageId 6831, 6837, 6843 for "willful," "intentional" "bad faith" phrasing.)

OTK says that "generally" there must be an order compelling discovery before sanctions. (OB p. 64) The district court identified its underlying Orders and summarized them in a chart. (Doc. 344-1)

OTK says that district courts have less discretion to impose "death penalty" sanctions than other sanctions and claims that "as a matter of established law" such sanctions do not receive "the same deference on appellate review" as other sanctions. (OB p. 65) These arguments are made without relevant citation. There is only one "abuse of discretion" standard of review. It is applied the same way to the most severe sanctions as anything else. *See NHL,* 427 U.S. at 642-643 and *Eades*, 298 F. App'x at 863.

OTK claims that what it had not done as of March 12, 2021 was produce time and pay records "in the format preferred by Hornady." (OB

p. 66) This "preferred" format was required by Orders including the stipulated June 2, 2020 Order. (Doc. 212) When it next says it had "produced time and pay records for 225 members" in .pdf and Excel formats, (OB p 66) it disregards (a) the other 51 Plaintiffs, (b) that those Excel productions omitted pay rates, and (c) that it had not produced anything reflecting step-up rates, authorized time and pay, or the bonuses documents required by the June 2, 2020 Order. (Doc. 212)

OTK complains that there was never an evidentiary finding that Pledger could have obtained Excel files with pay rates to satisfy what it imagines is a *Searock* standard about just one of its violations. (OB pp. 67-68) ADP informed OTK, twice, that OTK could generate the relevant information in Excel. (Doc. 300, PageId 3801) As shown in the reconsideration filings, Pledger herself was instructed by attorneys to include pay rates in the 2020 Excel production. (Doc. 393, PageId 6458-6460)

OTK suggests that the district court had to let Pledger testify live. (OB p. 68-69) Pledger's testimony by deposition (in this case and *Gibson v. Outokumpu Stainless USA, LLC*) and her Declaration, and her Supplemental Declaration demonstrated that she added data, changed

data, and / or removed data – even though she testified in her March 2020 deposition that she had not made any changes to the data she compiled. (Doc. 206-2, PageId 2207-2208) There is no precedent for OTK's suggestion that it is a reversible abuse of discretion error not to also let her testify live.

OTK echoes Pledger's false claim from her Declaration that she ran reports choosing information requested by attorneys. (OB p. 68)  The documents OTK produced showed that OTK's attorneys instructed Pledger to include pay rates like she had in 2018. (See discussion with cites at Doc. 393, PageId 6458-6460)

OTK says that the district court was obligated to consider lesser sanctions citing *EEOC v. Troy State Univ.*, 693 F. 2d 1353 (11th Cir. 1982) (OB p. 80) The Orders explicitly describe that sort of consideration. (Doc. 344, PageId 4710-4715; Doc. 409, PageId 6833-34)

It is unclear what OTK means when it says (emphasis added) that its contention is "not only that a default on liability should **not** have been entered" but that "**once liability is found**, the district court could" have awarded as sanctions liquidated damages using a three-year period. (OB p. 81)  On its face, OTK contradicts itself.  If what OTK is trying to argue

59

is that courts have no power to sanction FLSA defendants because the allowable "sanctions" are limited to the liquidated damages and SOL the statute already provides, there is no such precedent. In this case, the SOL defense was itself struck in 2019 as a sanction. (Doc. 108, p. 2) Liquidated damages are almost always awarded in FLSA cases because they are mandatory absent a showing of good faith (when they can still be awarded). *P&K Rest. Enter., LLC v. Jackson*, 758 F. App'x 844, 849 (11th Cir. 2019)

Using curious tense choices, OTK says it "has stated" it "would be prepared" to pay out twice what (it says) Hornady would have received for rounding. (OB p. 81)[10] It paid nothing. There is no precedent requiring a district court to split up an Answer and strike only parts of it in a default. Doing so makes no sense anyway since OTK's time and pay record discovery violations applied to all the overlapping claims, and its refusal to comply with the June 2, 2020 Order directly impacted the

---

[10] OTK cites to its own (disputed) factual positions about its timekeeping practices and amounts it claims could be segregated for rounded time. (OB pp. 81-82, 86-88) Those disputed contentions have no relevance to its appeal, but there is no way to segregate "rounded" time overtime pay from the overlapping FLSA violations.

discovery about bonuses, belated "trued up" payments, and the data needed to calculate damages.

Without apparent relation to any issue identified for appeal OTK announces that this certified collective action is instead an action with 276 individual plaintiffs because the common law claims resulted in a common law recovery.  (OB p. 86) OTK is wrong procedurally because the Plaintiffs' alternative common law could be joined under Fed. R. Civ. P. 18, 20.  (See Doc. 223, PageId 2658, 2661-2663).  But what it describes (a default with $13.1 million in damages under the FLSA and common law for 276 people) would be affirmed in a decertified collective with 276 joindered plaintiffs just like in a collective action.

5. <u>District Courts may consider both irremediable effects of misconduct and attorney misconduct in making discretionary sanctions decisions.</u>

a. *Remediable / Irremediable Consequences.*

OTK argues that its discovery violations were fully remediated by ADP's later production.  (OB pp. 76-77) It suggests that means the default judgment had to be set aside when Hornady "received the missing evidence" which (OTK then says) went "far beyond what is typical" for

discovery and "contradicts" the pleading.  The law and record facts are to the contrary.

First, the district court recognized that some "missing evidence" was never produced, and that long-overdue production is not a "cure." (Doc. 344, PageId 4702-4706, Doc. 409, PageId 6839-6840, 6845) Not only did OTK's counsel acknowledge in real time the inadequacy of some of the available data (before and after ADP's production) but the final joint submission on damages reflected how estimates had to be made to account for missing data. (Doc. 406, PageId 6626-6628, 6633-6634)  ADP's data for the period after August 2017 only partially filled the gaping holes in OTK's production.  It did not show whether what OTK paid matched what OTK's colorized records might have shown was authorized for payment.  Those were never produced.  The step-up rates before August 2017 were never produced and had to be estimated within later mathematical damages calculations.  OTK never put up a Rule 30(b)(6) deponent about its "trued up" payments and did not produce the bonus documents as required by the June 2, 2020 Order.

Second, cases like *Link v. Wabash*, *Malautea v. Suzuki, In re Sunshine Stores*, *NHL v. Metropolitan Hockey Club*, and *Aztec Steel v.*

*Florida Steel* are all referenced above.  In each, the description of the discovery misconduct shows that it was remediable in a literal sense (discovery could be provided, cases could be prosecuted or defended, etc.) even though nothing would retroactively change the impacts on adverse parties, the Courts' dockets etc.  In each case, the severest of sanctions were imposed and affirmed.  There is no question that the district court could properly consider both remediable and irremediable misconduct in determining an appropriate sanction.

At the beginning of this Argument Hornady quoted this question:

"How long can I pay these attorneys to avoid the outcome of the case becomes the businessman's question today."

OTK continues to demonstrate that its proposed answer is: "Forever."

b.    *Attorney Misconduct*

OTK says "excusing past counsel's failings is not what this case is about." (OB p. 37) It then fills pages arguing that it should not "pay the price" for what it calls Littler's "unilateral misconduct." (OB p. 70) Hornady has already recited the contrary law.  The district court's Orders described OTK's own misconduct and rejected the same argument.[11]

---

[11] OTK quotes the district court's oral comment that sanctions were "not just for discovery violations.  I mean it's the actual misrepresentations of

*Byrne v. Nezhat* is instructive. In that case an "innocent" client was not sanctioned for attorney misconduct that was not fairly attributable to her and there were no specific findings of bad faith by the client. *Byrne*, at 261 F. 3d at 1124; *Porto*, 645 F. 3d at 1304 (also requiring findings of specific sanctionable conduct by the party). *Byrne* does not apply here because the district court made the opposite substantive findings about OTK's culpability.

6. Damages arguments.

Within a Section C that has a caption referring to "due process" OTK raises an issue about damages calculations. (OB 79)  It points to payments it made to some plaintiffs in the spring of 2022 totaling $334,045.58.  It raised the issue of crediting those payments against the liabilities Hornady calculated on a week-by-week basis at the August 9, 2022 hearing and again in the joint submission.  (Doc. 435, PageId 7883-7888; Doc. 406, PageId 6640) Hornady's arguments for why no credit was available were reiterated at Doc. 406, PageId 6643-6647.  Obvious reasons the payments could not be credited against FLSA liabilities

---

counsel."  (OB p. 73) This is presented as if the district court said that sanctions were **solely** for attorney misconduct.  That is not what the district court said at that hearing, or in either default judgment order.

included (a) they were not part of a settlement process approved by a court or the Department of Labor, (b) OTK affirmatively represented to its employees that it had no obligation to make those payments under the FLSA (this was months after the entry of default), and (c) the amounts were not calculated on a weekly basis and could not be reconciled with the district court's weekly methodology.  Under *Freixa v. Prestige Cruise Services, LLC*, compensation and hours under the FLSA are calculated based on individual weeks. 853 F. 3d 1344, 1347 (11th Cir. 2017), see also 29 CFR § 779.419(b).

From there, OTK leaps to the entirely unrelated argument that it did not have to produce time and pay records because in other cases some aspects of discovery involve representative Plaintiffs. (OB pp. 84-86) OTK's court-ordered discovery obligations are not subject to attack here or now, but it agreed to those obligations.  The nature of the claims required each person's time and pay records to quantify each person's damages.  What William Hornady was entitled to for overtime pay from July 2015 through the end of his employment in 2018 depended on how long he worked, in which weeks, what rates of pay, what his bonuses were, etc.  None of those numbers for Mr. Hornady quantifies how much

Jane Doe is entitled to recover for working different hours, in various weeks, with different bonuses, at different rates, with different start and end dates of employment. "Individualized calculations of damages are common and, in fact, inevitable in FLSA collective actions." *Troxel v. Gunite Pros, LLC*, 2022 WL 37525, at *4 (S.D. Ala. 2022)

## C. The well-pleaded factual allegations in the TAC plausibly entitle Hornady to relief.

OTK's argument about both bonuses and the workweek claims present what amount to denials of alleged facts as if those denials are deemed true - the opposite of the status of the pleadings. (OB pp. 45-46) OTK's stricken Answer to the TAC did not assert any Rule 12(b)(6) position. (Doc. 228)

There are two steps to this Court's review of the TAC on appeal. (A) Any allegations that are merely legal conclusions are ignored, and (B) the veracity of well-pleaded allegations is assumed, and then the question is "whether they plausibly give rise to an entitlement to relief." *Harris by & through Davis v. Autry*, No. 20-13480, 2022 WL 392169, at *3 (11th Cir. Feb. 9, 2022); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) That is essentially the same as the standard for a Rule 12(b)(6) motion. *Harris*, at 3. Fed. R. Civ. P. 8(a) requires only (1)

jurisdictional content, (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) a demand for relief sought.  In the FLSA context, what is required is "enough factual matter (taken as true) to suggest' the required element." *Sec'y of Lab. v. Labbe*, 319 F. App'x 761, 763 (11th Cir. 2008) (citing *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007))

1. <u>Workweek.</u>

In a section captioned as being about discovery sanctions, OTK argues about whether the FLSA imposes liability when an employer designates a week for pay periods but calculates overtime pay on a different basis. (OB pp. 87-88)

If an employer starts and stops counting at the wrong date and / or time and operates 24/7/365 then weekly overtime pay miscalculations are inevitable.  The district court set this out, with citations, in its February 2022 Order. (Doc. 351, PageId 4746-4750) Cases illustrating that a mismatch between pay week designations and the time period used to count overtime lead to viable claims of FLSA overtime liability[12] are

---

[12] In its appellate brief OTK refers to an "analysis" it paid an economist for that it says was about one plaintiff. (OB pp. 87-88)  Supposedly, biweekly Earnings Statements were compared to time-clock data from

*Bruno v. Ford*, 2021 WL 4734412 (5th Cir. 2021), *Smith v. Werner Enterprises, Inc.*, 2015 WL 4459414 at *1, 3-4 (S.D. Ala. 2015), and *Johnson v. Phoenix Group, LLC*, 2013 WL 1345799 at *3 (S.D. Ohio) The *Smith v. Werner* opinion indicates that the exact same claim had also proceeded past summary judgment in an earlier case called *Pritchett v. Werner Enterprises, Inc.*, Civil Action No. 12–0182–WS–C (S.D. Ala). *Smith*, 2015 WL 4459414, at *1.

Paragraphs 18.2 – 18.9, 23-24, 39 of the TAC describe that sort of FLSA violation. (Doc. 223) The district court properly concluded that the TAC plausibly states a claim of entitlement to overtime pay when OTK did not calculate the time worked by Hornady et al using the 168-hour pay week it designated.

2. Bonuses.

The same is true for the bonus claim. The allegations of paragraphs 21 (with subparts) and 23 of the TAC set out how monthly bonuses were

---

ADP. But it was Pledger that testified that the records that showed what time was both approved and paid for were colorized. No records matching that description were produced for the period before August 2017. Although none of this is suitable for appellate review, it seems OTK is taking credit for syncing one set of bi-weekly records of what it paid against time records that do not accurately reflect what it should have paid.

not included in the regular hourly rate from which the overtime pay rates were calculated even though they did not fall within an exclusion from 29 U.S.C. § 207(e). The bonuses earned over a calendar month were quantified as a percentage of the four (or six) weeks of pay the employees happened to receive during a calendar month. The bonus amounts were not a percentage of what the employees earned for work during the calendar month. Paragraph 25 alleged that the plaintiffs "should have been paid for hours worked in excess of 40 hours in a single week at time and a half a regular hourly rate which included the monthly bonus payment." (Doc. 223, PageId 2653) Those factual allegations describe a failure to pay overtime required by the FLSA.

In addition to the statute text, there is 29 CFR § 778.210. Numerous authorities illustrate (directly and indirectly) that 29 CFR § 778.210 will never exclude bonuses from regular rates unless the period a percentage bonus is earned is the same as the period of earnings that the bonus percentage is applied to when determining the monetary amount of the bonus. Whenever there is a mismatch between the period the bonus is earned and the period of earnings the percentage bonus is applied to, the bonuses are deemed non-compliant with the FLSA. When

69

the two periods are the same, (assuming no other problems) the bonuses comply with the FLSA. *Russell v. Government Employees Ins. Co.*, 787 F. App'x 953 (9th Cir. 2019); *Brock v. Two R Drilling Co., Inc.*, 789 F.2d 1177, 1179 (5th Cir. 1986); *Siomkin v. Fairchild Camera & Inv. Corp.*, 174 F. 2d 289, 293-294 (2nd Cir. 1949) (which predates § 778.210); *Breig v. Covanta Holding Corp.*, 2022 WL 837242 (E.D. Pa. 2022); *Barragan v. Home Depot U.S.A., Inc.*, 2021 WL 3634851 (S.D. Cal. 2021); *Akers v. Tim Jungblut Trucking, Inc.*, 2020 WL 1447647 (S.D. Ind. 2020); *Weninger v. Gen. Mills Operations, LLC*, 344 F. Supp. 3d 1005, 1009 (E.D. Wis. 2018); *Harris v. Best Buy Stores, L.P.*, 2016 WL 4073327 (N.D. Cal. 2016); *Shepard v. City of Waterloo*, 2015 WL 9165915 (N.D. Iowa 2015); *White v. Publix Super Markets, Inc.* 2015 WL 494837 (M.D. Tenn. 2015); Opinion Letter FLSA, 2019 WL 2914103 (July 1, 2019); Opinion Letter FLSA, 2018 WL 5393308 (Jan. 5, 2018); Opinion Letter FLSA, 2006 WL 4512946 (Feb. 17, 2016); Opinion Letter FLSA, 2005 WL 3308593 (Aug. 26, 2005); Opinion Letter FLSA, 2004 WL 3177882 (Sept. 21, 2004); Opinion Letter FLSA, 1998 WL 852723 (Feb. 23 1998) Opinion Letter FLSA, 1997 WL 998000 (Jan. 23, 1997); Opinion Letter FLSA, 1973 WL

70

36798 (Jan. 8 1973); Opinion Letter FLSA, 1970 WL 26444 (Aug. 17, 1970)

The February 17, 2022 Order cited some of those. It accurately explained how § 778.210 only applies if the way belated percentage bonuses are calculated has exactly the same mathematical result as if 29 U.S.C. § 207(e) is followed, which cannot happen when the time period the bonus is earned and the time period of earnings (not payments) the bonus is applied to are different.  (Doc. 351, PageId 4750-4753)

Ultimately, OTK identifies nothing to substantiate any contention that its bonus payments fall within any exclusion to § 207(e).  It does cite to the *Russell v. Gov't Employees* and *Barragan v. Home Depot* cases but does not acknowledge the parts of those opinions that refute its position. *Barragan* describes how bonuses that were a percentage of earnings during the same period were compliant with the FLSA, but that lump sum bonuses (rounded up to $100) were not.  That court noted that accepting Home Depot's suggestion that $100 could be characterized as a percentage would eviscerate § 778.210.  *Barragan*, at *7 (granting summary judgment to Plaintiffs).

71

In *Russell,* the bonus earned over a year and paid as a percentage of earnings over the year was valid. The *Russell* court emphasized that the bonus plan was consistent with FLSA Opinion Letter, 1997 WL 998000. *Russell*, at 954. That Opinion Letter describes payments that "include the same percentage of both the employees' straight time earnings and any overtime compensation paid to the employees **for the period in question.**" (emphasis added)

Neither case can be read to mean that a bonus William Hornady earned from April 1 – 30 would be excluded from regular rates if it was paid as a percentage of wages earned from March 20 – April 17, or even March 13 – April 23 (if those happened to be the 28 or 42-day periods covered by the paychecks actually issued in April).

The chronology of why the bonus issues was only partially adjudicated by summary judgment was discussed at page 15. After appealing this case, the district court entered summary judgment on the same bonus claim for the plaintiff in the *Gibson* case. That is not before the Court even though OTK is arguing about it in brief.

OTK's description of how it pays bonuses may not clearly explain how they are calculated. Hornady's summary judgment submission in

this case is at Docs. 244-246 with all its incorporated record cites. Employees are paid by direct deposit every other Friday. Most months have two paydays. Some have three. The Friday paychecks are for a two week period ending about five days earlier (Hornady says "about" because that depends on when the designated 168 hour pay period ends). Bonuses are earned based on production criteria over a calendar month. If a bonus is earned, it is quantified as a percentage. The same percentage applies for all hourly employees plant-wide.

The dollar amount of the bonus is the percentage applied to what the employee was paid for the four or six weeks of work that are covered by the two or three paychecks that were issued within the calendar month the bonus was earned. Those 28 or 42-day periods never coincide with the 28, 29, 30, or 31-day calendar month a bonus is earned. The 28 or 42-days of pay the percentage is applied to always start before the calendar month in which the bonus is earned, and always end sometime during the month in which the bonus is earned. (Doc. 223, PageId 2653-2655, Doc. 246, PageId 3073-3075) Because the amounts earned over 28 or 42-days are always different from the amount an employee earns from the first to the last day of a calendar month, the bonus amount that is

paid never has the same mathematical equivalency 29 CFR § 778.210 requires.

OTK has tried to gloss over both what it does and what the law says. But what the district court did was compare the TAC's factual allegation to the statute and the other authorities that describe FLSA violations. It then assessed whether the facts alleged plausibly describe a basis for entitlement to overtime pay. They do.

### 3. Common law claims.

OTK makes a similar, shorter argument about the alternative state-law claims, citing only *Bujalsi v. Kozy's Rest., Inc.* 2017 WL 57344 (N.D. Ala. 2017). (OB p. 94) *Bujalsi* involved FLSA minimum wage claims which preempted some other claims like breach of contract. Here, however, Hornady made overtime claims for weeks that more than 40 hours were worked. Hornady tried to make FLSA "gap time" claims for the weeks with less than 40 hours worked. The district court found (consistent with some authorities) that the FLSA does not address "pure gap time" claims. (Doc. 351, PageId 4758) It then found that the alternate common law claims that were limited to time that had been rounded (and not paid for) in weeks that plaintiffs worked less than 40

74

hours were viable under the common law. (Doc. 351, PageId 4758-4760) A recovery allowed by state law that is different from the FLSA is not preempted because "the FLSA permits state law to provide for greater protections than the FLSA provides." *Fernandez v. City of Fruitland Park*, 2016 WL 8329400 (M.D. Fla. 2016) ; *see also Avery v. City of Talladega, Ala.*, 24 F. 3d 1337, 1348 (11th Cir. 1994)

OTK closes its Argument Section D with another meritless non-sequitur. OTK says (without citation) that joining 276 Plaintiffs in a single action without considering preemption of 276 joined state law claims is "reversible error." (OB p. 94) OTK is wrong for three reasons. First, all of the Plaintiffs had the same (ultimately doomed) FLSA gap time claim which had proceeded collectively. Second, even a valid FLSA preemption argument (in an Answer) would be appropriate for a collective resolution. But third, the flip side of the collective "gap time" claim is that the alternative common law claims also proceeded in a single case – not because of Rule 23 – but under Fed. R. Civ. P. 18 and 20(a). There is nothing dismissible, or reversible, about the final judgment which encompassed the common law claims.

## D. Detailed affidavits are not mandatory before entering a judgment for damages quantified by mathematical calculations.

In *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F. 2d 1538, 1544 (11th Cir. 1985) this Court stated that a hearing before a default judgment for damages was not required if the amount claimed was a liquidated sum or was "capable of mathematical calculation." (citing *United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir.1979)) The district court cited that case, and starting in February 2021 conducted hearings so that "simple" if not "easy" mathematical calculations could be performed using a court-ordered methodology. (See Doc. 442, PageId 7983) There is no precedent requiring detailed affidavits in this situation.

This makes sense because mathematical calculations are objectively verifiable – as opposed to, perhaps, statements about personal injury which an affiant must verify.

Furthermore, the point of stipulations is to eliminate superfluous evidentiary submissions. Quantifying damages based on mathematical calculations is a three-step process. What should be calculated? What numbers go into the calculations? Were the calculations performed

76

accurately?  As described above, Hornady proposed a methodology.  OTK objected.  The district court directed Hornady to use a modified methodology.  Hornady had 276 calculations performed using that methodology.  All those calculations and the underlying data inputs were provided to OTK to review (and, if necessary, to correct).  The parties' joint submission reflected that there was no dispute about the numbers that were used, or the accuracy of the calculations.  (Doc. 406, PageId 6626-6627)

Under these record facts, there is no error.  No precedent requires "detailed affidavits" for a process that involved only the court's designated mathematical calculations and stipulated inputs.

77

# VI.    Argument (Cross-Appeal)

## A. The District Court Erred by Applying a Statute of Limitations Defense That Was Already Struck.

It may be odd that a reversible error worth $3.7 million can be completely described in a few paragraphs, but that is the case here. Both the First Amended Complaint and the TAC sought to recover under the FLSA for violations dating back to July 30, 2015, and preemptively sought equitable tolling. (Doc. 223, paras 11, 16.5, 18 (with subparts) 25, 30 and Wherefore clause; *see also* Doc. 5 paras 11, 23, 28(a), 28(b) and Wherefore clause).   OTK's SOL defense was struck twice by the Magistrate Judge, and then the district court struck the Answer. (Docs. 108, 277, 344)

OTK's Objection 4 to the damages methodology Hornady submitted was based on its stricken SOL.  Hornady addressed that in his response, and then made sure to preserve the issue in the final damages filings. (Doc. 362, PageId 5602, Doc. 406, PageId 6649)   The final damages submissions showed that 22 people who timely opted-in were deprived of any FLSA recovery by the application of the struck SOL and the collective had FLSA damages reduced by $3,705,908.52. (See Docs. 406, 407-10 columns F and N)

Before OTK could rely on a SOL affirmative defense to limit the damages sought in the TAC, there had to be an Answer with an SOL defense.  See Fed. R. Civ. P. 8(c), *Dav v. Liberty Nat'l Life Ins. Co.*, 122 F. 3d 1012, 1015 (11th Cir. 1997) (reversing ruling on motion to alter or amend that limited a jury award by applying a SOL defense that had not been asserted.)  There was not.  It is reversible error to apply a SOL defense to limit damages for alleged violations dating back to July 2015 that were expressly pled.

## B.  A mooted equitable tolling ruling cannot be the basis to apply a statute of limitations defense.

If there is no SOL then there is no need to toll an SOL.  OTK's extensive misconduct created a bizarre procedural chronology.  OTK never objected to the motion for conditional certification – it just initially said it would.  The only consequence of conditional certification is entitlement to court-approved written notice.  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)  With the benefit of hindsight, the plaintiffs who opted to became collective members were entitled to notice when the conditional certification motion was filed.  If notice had gone out in the fall of 2018 instead of in the summer of 2019 this would matter much less.

As described, the May 30, 2019 Order identified individualized issues about tolling but prohibited briefing until further order. (Doc. 93, PageId 571-572) There was no other Order, but about 20 months later the district court ruled. In that Order it commented on the lack of individualized showings. (Doc. 276, PageId 3563-3564)

Notice and opportunity to respond are the essential requirements of due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)   If this Court agrees with Hornady's position that the district court could not limit damages by applying a SOL that had been struck, then the due process question is moot.  Otherwise, it is reversible error because OTK bootstrapped Objection 4 to the tolling denial that was compromised by an explicit lack of due process.

## VII.  Conclusion

For the reasons described, Hornady submits that this Court should affirm the district court in all respects except that it should instruct the district court to amend the judgment to award $3,705,908.52 additional damages under the FLSA as shown on Doc. 407-10 (and to make the related, smaller, reductions in common law damages for the same weeks).

May 15, 2023.

Respectfully submitted,

By:   /s/ Ian D. Rosenthal
Ian D. Rosenthal

DAVIS, DAVIS & ASSOCIATES
Ian D. Rosenthal
27180 Pollard Road
Daphne, Alabama 36526
(251) 621-1555
ian@ddalawfirm.com

MCDOWELL KNIGHT ROEDDER
    & SLEDGE, LLC
Frederick G. Helmsing, Jr.
11 North Water Street, Suite 13290
Mobile, Alabama 36602
(251) 432-5300
fhelmsing@mcdowellknight.com

SIMS LAW FIRM, LLC
Patrick H. Sims
P.O. Box 7112
Mobile, AL 36670
(251) 490-9424
Patrick@simslawfirm.net

*Counsel for William Hornady et al.*

_____

No. 22-13691-HH

*William Hornady, et al. v. Outokumpu Stainless USA, LLC*

_____

## CERTIFICATE OF COMPLIANCE WITH RULE 32

This submission complies with the type-face requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in 14-point Century Schoolbook, which is a proportionally spaced font that includes serifs.

The foregoing complies with the word limit and contains 15,160 words.

_____

_/s/ Ian D. Rosenthal_____
OF COUNSEL

Dated: May 15, 2023.

82

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 15, 2023, I electronically filed the foregoing document using the Court's CM/ECF system for filing which will send notification of such filing to the following:

**Devin C. Dolive, Esq.**
Burr & Forman, LLP
420 North 20th Street – Suite 3400
Birmingham, Alabama 32503
ddolive@burr.com

**Cheri Turnage Gatlin, Esq.**
Burr & Forman, LLP
190 East Capitol Street, Ste M – 100
Jackson, MS 39201
cgatlin@burr.com


*/s/ Ian D. Rosenthal*
COUNSEL