No. 22-13691-HH

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

WILLIAM HORNADY, *ET AL.*,

*Appellees / Cross-Appellants,*

vs.

OUTOKUMPU STAINLESS USA, LLC,

*Appellant / Cross-Appellee.*

---

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT OF ALABAMA

No. 1:18-cv-00317-JB-N

---

## APPELLEES/CROSS-APPELLANTS' REPLY BRIEF

---

Ian D. Rosenthal
Davis, Davis & Associates
27180 Pollard Road
Daphne, Alabama 36526
(251) 621-1555

Patrick H. Sims
Sims Law Firm, LLC
P.O. Box 7112
Mobile, AL 36670
(251) 490-9424

Frederick G. Helmsing, Jr.
McDowell Knight Roedder & Sledge, LLC
1 North Water Street, Suite 13290
Mobile, Alabama 36602
(251) 432-5300

*Attorneys For Appellees / Cross-Appellants William Hornady, et al.*

No. 22-13691-HH

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

WILLIAM HORNADY, ET AL.,
*Appellees / Cross-Appellants,*

vs.

OUTOKUMPU STAINLESS USA, LLC,
*Appellant / Cross-Appellee.*

**APPELLEES / CROSS-APPELLANTS CERTIFICATE OF**
**INTERESTED PERSONS**

Counsel of record for Appellees / Cross-Appellants William Hornady, et al. state that they believe the Certificate of Interested Persons filed by Outokumpu Stainless USA, LLC ("OTK") is accurate.

/s/ Ian D. Rosenthal
Ian D. Rosenthal

One of the Attorneys for
Appellees / Cross-Appellants
William Hornady, et al.

Ian D. Rosenthal
Davis, Davis & Associates
27180 Pollard Road
Daphne, Alabama 36526
(251) 621-1555

C-1

# Table of Contents

**Page**

APPELLEES / CROSS-APPELLANTS CERTIFICATE
OF INTERESTED PERSONS ....................................................... C-1

TABLE OF CITATIONS ................................................................. ii

ARGUMENT .................................................................................. 1

    A.    Standard of Review ................................................. 1

    B.    Acknowledged Typographical Errors ..................................... 2

    C.    The Damages of 219 Plaintiffs Cannot Be Limited By
    A Struck SOL ................................................................. 3

        1.    An SOL is inapplicable to damages when it is
        inapplicable to liability ......................................... 3

        2.    The district court did not, and could not *sua
        sponte* apply a struck SOL................................... 5

            a.    The SOL was not applied *sua sponte* ................... 6

            b.    Plaintiffs' allegations of FLSA violations
            since July 30, 2015 were not frivolous or
            implausible.............................................. 6

            c.    The scattered cases OTK cites do not
            support its Argument that a struck SOL
            limits the claims of opt-in Plaintiffs ................. 14

    D.    The Opt-In Plaintiffs Complied with The Court's
    Orders and Were Deprived of Due Process........................... 17

CONCLUSION ................................................................. 19

## <u>Table of Citations</u>

**Page(s)**

**Cases:**

*Am. Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010)................................................................8

*Annette v. Haslam*,
   2020 WL 2520512 (M.D. Tenn. 2020) ...................................................17

*Chen v. Wow Restaurant TH, LLC*,
   2023 WL 3976005 (M.D. Fla. 2023) .......................................................14

*Clark v. A&L Homecare & Training Ctr., LLC*,
   68 F.4th 1003 (6th Cir. May 19, 2023)...................................................12

*Clark v. Ga. Pardons & Paroles Bd.*,
   915 F.2d 636 (11th Cir. 1990)..................................................................15

*\*Day v. Liberty Nat'l Life Ins. Co.*,
   122 F.3d 1012 (11th Cir. 1997)........................................................2, 7, 8

*\*Ellis v. Gen. Motors Acceptance Corp.*,
   160 F.3d 703 (11th Cir. 1998)..................................................................9

*Franklin v. State of Oregon*,
   563 F. Supp. 1310 (D. Ore. 1983) ..........................................................15

*Grayson v. K Mart Corp*,
   79 F.3d 1086 (11th Cir. 1996)..................................................................11

*\*Harris by & through Davis v. Autry*,
   2022 WL 392169 (11th Cir. Feb. 9, 2022) ..............................................8

*Harris v. SMI Bldg. Servs. LLC*,
   2013 WL 942591 (W.D. Wash. 2013) .....................................................15

*Holmberg v. Armbrecht*,
   327 U.S. 392 (1946)..................................................................................9

*In re Liebman*,
   772 F. App'x 839 (11th Cir. 2019) ...........................................................1

*Leonhard v. United States*,
 633 F.2d 599 (2d Cir. 1980) .................................................. 16

*Levald v. City of Palm Desert*,
 998 F.2d 680 (9th Cir. 1993) ................................................ 16

*Manasco v. Best in Town, Inc.*,
 2022 WL 816469 (N.D. Ala. Mar. 17, 2022) ................................... 13, 14

*Millstein v. Cnty. of Los Angeles*,
 2023 WL 4315544 (C.D. Cal. July 3, 2023) ......................................... 15

*Mischler v. Bevin*,
 2019 WL 2644639 (6th Cir.  2019) ................................................ 15, 16

*Richardson v. Boyd Sch., Inc.*,
 2014 WL 1577015 (N.D. Ala. 2014) ..................................................... 7, 8

*Sapuppo v. Allstate Floridian Ins. Co.*,
 739 F.3d 678 (11th Cir. 2014) ............................................................ 1

*Wright v. Waste Pro USA, Inc.*,
 69 F.4th 1332 (11th Cir. June 13, 2023) ................................................ 9

## Statutes & Other Authorities:

29 U.S.C. § 256(a) ..................................................................... 12

Fed. R. Civ. P. 8(c)(1) ................................................................. 5

## ARGUMENT

OTK's response/reply brief strays significantly from its Opening Brief even though this Court generally does not address arguments made for the first time in a reply brief. *In re Liebman*, 772 F. App'x 839, 840 (11th Cir. 2019) (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681, 683 (11th Cir. 2014)) The Appellees / Cross-Appellants (collectively referred to as "Hornady") will not do the same and will focus on the inadequate arguments OTK made in reply to Hornady's cross-appeal.

### A.    <u>Standard of Review</u>.

OTK acknowledges that a *de novo* standard applies to the cross-appeal. OTK incorrectly asserts that Hornady did not set out a standard of review (OTK Reply Brief, Doc. 58 p. 19), but in the initial brief Hornady stated "[t]he pure legal issues for cross-appeal are also reviewed *de novo*…" (Hornady Opening Brief, Doc. 52 p. 40)

**B.    <u>Acknowledged Typographical Errors</u>.**

While there are many things OTK is wrong about in this case, it is correct about two inadvertent clerical errors in Hornady's brief.  First, the citation to *Day v. Liberty Nat'l Life Ins. Co.,* 122 F.3d 1012, 1015 (11th Cir.1997) should have been to *Day* rather than *Dav*.  Second, OTK is correct that due to an inadvertent transposition of digits, Hornady miscalculated the amount the judgment will increase by if the erroneous application of a statute of limitation ("SOL") to limit damages is reversed. The correct amount the judgment would increase by is $3,507,501.66 (for a total of $16,679,460.22).  (See OTK Reply Brief, n. 3[1] and also Docs. 407-1, PageID 6672 and 407-10, PageID 6798)

---

[1] There is, perhaps, no better way to ensure a typographical error than to point out someone else's.  Therefore, with great trepidation Hornady notes that at page 12, footnote 6, of OTK's Reply Brief where OTK discusses Hornady's transposition of a "5" and a "7" OTK cited to its own footnote 2 (Doc. 58, p. 25) when it clearly meant to cite to its own footnote 3.  Those sort of innocent errors are nothing like the intentional conduct that led to the entry of default.

2

**C.**    **The Damages of 219 Plaintiffs Cannot Be Limited By A Struck SOL.**

1.    *An SOL is inapplicable to damages when it is inapplicable to liability.*

In its reply OTK does not argue that it could assert a SOL defense after it was struck.  Instead, first, it presents a false / inaccurate dichotomy.  OTK implies that applying a SOL defense to damages is somehow different than applying it to liability.  (See OTK Reply Brief, Doc. 58 pp. 67-68)  OTK emphasizes that a Plaintiff must prove damages. It simply ignores that the time period for which damages have to be proven depends on whether there is an applicable and enforceable SOL.

In the usual course, if a Defendant asserts a SOL defense and then proves its application, then the SOL is a defense to liability.  In that common scenario, even if a Plaintiff could have established the elements (including damages) of a time-barred claim, the Plaintiff's recovery period for damages is limited to the claims (or partial claims) that are not barred by the SOL.  A less common scenario arises when a Defendant fails to plead (or otherwise waives) a potentially viable SOL.  Then, if a Plaintiff can establish the elements of the otherwise time-barred claim, the recovery period for proven damages is not limited by the SOL.

Here, once OTK's Answer was struck (along with its SOL defense for the third time) the result was that Hornady did not have to prove the elements of FLSA or common law claims so long as the well-pleaded allegations would, if true, establish liability. The allegations that established OTK's FLSA liability to the initial named Plaintiffs dating back to July 30, 2015 established OTK's liability for the same time - frame for the other Plaintiffs.

Although none of the Plaintiffs had to prove liability dating back to July 30, 2015 after the entry of default, they still had to show the amount of damages for the period that liability had been established via default. After extensive presentations by the parties about the methodology for mathematical calculations to establish each Plaintiff's damages, the district court approved a specific methodology. The methodology was the same for all Plaintiffs. The only difference is that the initial Plaintiffs were allowed to apply the methodology to time and pay records dating back to July 30, 2015 and the others were only allowed to do so for a time-period that began three years before each filed a consent to opt-in. That limitation is reversible error.

That happened because OTK asserted its struck SOL and the district court applied that SOL as if OTK was not liable to the 219 Plaintiffs (whose FLSA damages were reduced or eliminated) under the FLSA back to July 30, 2015 as alleged in the TAC. That result would have been appropriate if, counterfactually, OTK's SOL defense had not been struck, and OTK had proven its application (and the SOL was not equitably tolled). But on the procedural facts that actually happened, applying the SOL to limit damages was reversible error.

2.    *The district court did not, and could not sua sponte apply a struck SOL.*

Given OTK's loose and amorphous characterization of the SOL defense in this case, it is worth a brief return to "first principles." Now, and at all applicable times, the subject of affirmative defenses is addressed in Fed. R. Civ. P. 8(c)(1). Among the defenses listed there is "Statute of Limitations." As that rule states a Defendant who responds to a complaint **must** set out its affirmative defenses in the Answer. That rule makes no distinctions between SOLs as to damages vs. liability. Nor does it speak of a judge acting in the shoes of a Defendant and asserting the defense. The rule is clear and simple: affirmative defenses including a SOL must be set out in the Answer

5

OTK argues that even though it had no defenses the district court could *sua sponte* apply a SOL. There are three, independent, fatal flaws in OTK's position. (a) The SOL was not applied *sua sponte*, (b) any application of a SOL on a *sua sponte* basis depends on there being "frivolous" and / or not "plausible" allegations, and (c) the few cases OTK cites are wildly inapposite.

### a. The SOL was not applied *sua sponte*.

While OTK argues that courts can apply an SOL when it is not expressly waived (OTK Reply Brief, Doc. 58, pp. 68-69) in this case the SOL was not applied *sua sponte*. OTK asserted the SOL in its objections to Plaintiffs' Damages Calculations even though it had been struck. (Doc. 363, PageId. 5644, n 6). While OTK did not expressly waive the SOL, its conduct led to the SOL being struck three times. That is worse.

### b. Plaintiffs' allegations of FLSA violations since July 30, 2015 were not frivolous or implausible.

OTK argues that pleadings asserting claims barred by a SOL can be dismissed as "frivolous." As discussed below, the authorities OTK cites do not actually show that un-asserted or struck SOL defenses are applied to dismiss claims, but OTK's position has graver defects. First, it assumes that a SOL does not have to be plead (and proven) to be

6

enforced. Second, it simply ignores that Hornady explicitly sought equitable tolling which is a plausible entitlement to relief beyond a statutory SOL

Hornady discussed *Day v. Liberty Nat'l Life Ins. Co.,* 122 F.3d 1012, 1015 (11th Cir.1997) in its initial brief. Hornady submits that a Defendant that has had a SOL struck (or a default entered because the Answer was struck) is, as a matter of law, not in a better position than a Defendant that waived a SOL defense. *Day* and the only case to apply it in an FLSA context show that because Hornady's allegations described FLSA violations since July 30, 2015 OTK's default liability to all the Plaintiffs dated back to July 30, 2015 even without equitable tolling.

*Richardson v. Boyd Sch., Inc.*, 2014 WL 1577015, at *3 (N.D. Ala., 2014) applied *Day* in the FLSA context. When there is no SOL to apply, the Defendant's liability under the FLSA (and the Plaintiff's recovery of damages) is tied to the time - frame of FLSA violations established by the well-pleaded allegations.

> This action was filed on January 7, 2014; therefore, plaintiff ordinarily would be entitled to back wages for the period beginning three years before the date of suit (assuming a willful violation), or January 7, 2011 (rather than beginning March 2010). However, the Eleventh Circuit has held that the § 255(a) statute of limitations is "an affirmative defense which

> must be specifically pled." *Day v. Liberty Nat'l Life Ins. Co.,* 122 F.3d 1012, 1015 (11th Cir.1997). In this case, defendant has not raised such an affirmative defense. Thus, plaintiff may seek back wages for her entire period of employment with defendant.

*Richardson*, at *3. OTK's unlawful practices began years earlier than July 2015, but the TAC's allegations only concerned the period since July 30, 2015. Therefore, that is the period of liability established by the well-pleaded allegations of the TAC. It is also the period for which damages are to be awarded to all the Plaintiffs (assuming they worked as far back as July 30, 2015).

Under that approach, the entire equitable tolling issue is moot. But, the conclusion that OTK's liability to opt-in Plaintiffs begins July 30, 2015 can be reached by a longer road. The TAC in this case sought equitable tolling. OTK recognizes that its liability is defined by the plausible entitlement to relief reflected in the TAC. *Harris by & through Davis v. Autry*, 2022 WL 392169, at *3 (11th Cir. Feb. 9, 2022); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)

The FLSA allows for equitable tolling (whether or not there is a collective action). Therefore, if there were a SOL to toll, the district court

could not disregard the equitable tolling part of the TAC to limit damages.

It is indisputable that equitable tolling is a "plausible" basis to extend liability under the FLSA.[2] "Unless Congress states otherwise, equitable tolling should be read into every federal statute of limitations." *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998) (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 394–96 (1946)) With regard to the FLSA, Congress has not stated otherwise.

Equitable tolling issues arise in FLSA collective actions as well as FLSA actions that do not involve collectives. Last month this Court said: "*Mickles* establishes that equitable tolling is available in Fair Labor Standards Act cases . . ." *Wright v. Waste Pro USA, Inc.*, 69 F 4th 1332, 1340 (11th Cir. June 13, 2023) Admittedly, judges within this Circuit, like those around the country, have expressed different views on the parameters of equitable tolling in a FLSA context. This is particularly

---

[2] OTK argues that allegations that "contravene" a SOL are not well-plead. (OTK Reply Brief Doc. 58, p. 68) Simply put, express claims for equitable tolling cannot improperly "contravene" the same SOL they acknowledge and then seek to toll because a claim for equitable tolling is a claim for a longer liability period.

true of FLSA collective actions. The district court, as of February, 2021 stated its analysis. (See Doc. 276)  While Hornady submits that the district court's analysis / application of equitable tolling did not accurately apply *American Pipe* principles, Hornady also acknowledges that the district court's analysis was not "implausible" as it flowed from a number of other cases.  For exactly the same reason Hornady's position on equitable tolling was also not implausible. As a result, *assuming arguendo* there was a SOL to toll, the district court could not apply an SOL the same way that it might have if the equitable tolling issue had been finally adjudicated on the merits.  The entry of default and the corresponding determination of liability precluded any merits adjudications (other than the determination that the stated entitlement to relief was plausible).

Without getting unnecessarily far into counter-factual hypotheticals, if there had not been a default as to liability, and depending on a host of other possible developments, this case might have come before this Court as a suitable platform to address the exact parameters of equitable tolling in FLSA collective actions.  Instead, the SOL was struck.  That should have mooted the equitable tolling issue, but OTK then asserted the SOL as an

10

"objection" to a damages methodology and the district court limited the damages of opt-in Plaintiffs by "sustaining" the objection. (Doc. 363, PageId 5640-5645, Doc. 366, PageId 5662)

For this case, at this point, what should suffice is the recognition that while the district court had a different view in February 2021 of the application of equitable tolling than the Plaintiffs expressed in 2018, there should be unanimous agreement that the Plaintiffs expressed a "plausible" approach to the relief available under the FLSA.

OTK points to *Grayson v K Mart Corp*, 79 F. 3d 1086, 1106 n. 38 (11th Cir. 1996) to say that "this Court has confirmed that the statute means what it says." (OTK Reply Brief Doc. 58 p. 70) What OTK ignores, however, is what *Grayson* says, just as it ignores that since *Grayson* courts continue to acknowledge the plausibility of equitable tolling in FLSA collective actions.

The word "equitable" does not appear in *Grayson*. In *Grayson*, this Court decided that Plaintiffs who opt-in under the ADEA (like the FLSA) commence their action when the consent is filed. That analysis was based on the statutory text. The Court did not address tolling within the FLSA or ADEA (other than stating that Rule 23 class tolling was

11

inapplicable). On its face *Grayson* did not preclude equitable tolling, and courts have acknowledged the actual and potential application of equitable tolling post-*Grayson*. Presumably this is because the availability of equitable tolling is not based on the statutory provision about when any particular Plaintiff's action "commences." The commencement dates for both original named party Plaintiffs and those who later file written consents under 29 U.S.C. § 256(a) are a benchmark for a SOL (just like the filing of any other Complaint). That SOL can be lengthened by equitable tolling because Congress has not said otherwise.

Hornady has mentioned this Court's recent *Wright* opinion (which came before the Court as a single Plaintiff FLSA case). In numerous other cases courts have considered, and sometimes granted, equitable tolling to opt-in Plaintiffs in FLSA collective actions. One very recent and thorough discussion is Judge Bush's concurrence in *Clark v. A&L Homecare & Training Ctr., LLC,* which begins at 68 F.4th 1003, 1012 (6th Cir. May 19, 2023) In *Clark* the Sixth Circuit charted a new course for itself about conditional certification and notice.[3]

---

[3] Judge Bush's concurrence was joined, in part, by Judge White. "I thus agree with Judge Bush that, given the court's new standard, district

There are similarities between Judge Bush's analysis and the positions in Hornady's 2018 motion for equitable tolling. (Doc. 22) That similarity does not mean that either Hornady (or Judge Bush) are "right" in some absolute sense about what – someday – the United States Supreme Court might say about equitable tolling of FLSA collective actions if the FLSA is not amended by Congress. But, the similarity shows the continued plausibility of Hornady's equitable tolling position.

While OTK ignores *Mickles*, *Wright* and every other case recognizing equitable tolling that has post-dated *Grayson*, the dispositive point here (assuming there is a SOL to toll) is that those cases reflect the plausibility of Plaintiffs' position. Hornady cited more than a dozen examples in his 2018 motion. (See Doc. 22, pp. 5-19), and courts have continued to acknowledge the viability of equitable tolling since 2018. For example, within this Circuit, in *Manasco v. Best in Town, Inc.*, Plaintiffs sought equitable tolling during the FLSA collective action notice period. That district court "reserve[d] the issue, and Plaintiffs may reassert their request if it becomes apparent that any dancer's claims

---

courts should freely grant equitable tolling to would-be opt-in plaintiffs." *Clark*, at 1017.

would be barred if the statute of limitations were not equitably tolled." 2022 WL 816469, at *12 (N.D. Ala. Mar. 17, 2022). *Chen v. Wow Restaurant TH, LLC*, 2023 WL 3976005 (M.D. Fla. 2023) illustrates a different approach with a different result – although even there the district court that denied equitable tolling specifically noted that its ruling about conditional certification (i.e. triggering notice) was within two months of the motion. *Chen*, at *7.

Assuming there is a SOL to toll, the opt-in Plaintiffs in this case cannot be in a worse position after OTK's default than they would have been otherwise. A comprehensive survey of all the various equitable tolling orders over the years would show a range of results based on differing facts, and differing judicial approaches. What is relevant here is that if there is any SOL to toll, then there is also a plausible entitlement to relief through equitable tolling. As a result, the district court could not apply a SOL to limit damages.

c. The scattered cases OTK cites do not support its argument that a struck SOL limits the claims of opt-in Plaintiffs.

In arguing that this Court should treat the district court's application of a SOL to limit damages as if it were a *sua sponte* decision to dismiss a frivolous claims OTK cites to a handful of cases. None

14

mention equitable tolling.  None involve the FLSA.  None involve a SOL defense that was waived, or struck.

OTK cites *Clark v. Ga. Pardons & Paroles Bd.*, 915 F. 2d 636, 640 n. 2 (11th Cir. 1990) to accompany its suggestion that a pleading asserting claims that are barred by a SOL can be dismissed as frivolous. In *Clark*, nothing in the record provided a basis "for concluding that Clark's case is frivolous."  *Clark*, at 640.  Footnote 2 of *Clark* included a counter-example cite to *Franklin v. State of Oregon,* 563 F. Supp. 1310, 1324, 1332–32 (D. Ore.1983).  That part of *Franklin* relates to a specific procedure for dismissals of frivolous prisoner civil rights cases even before service. (In *Franklin* the Defendant state agency was very clearly participating in the litigation).[4]

OTK cites to *Mischler v. Bevin*, 2019 WL 2644639 (6th Cir.  2019). *Mischler* describes a *pro se* complaint filed in 2017 against about 25 Kentucky state employees ranging from social workers to Governor

---

[4] Within the Ninth Circuit, in the FLSA context courts do not apply SOL defenses which have been waived. *Harris v. SMI Bldg. Servs. LLC*, 2013 WL 942591, at *4, n. 5 (W.D. Wash. 2013).  District courts there continue to consider, and sometimes apply, equitable tolling to protect FLSA collective action plaintiffs.  See, *Millstein v. Cnty. of Los Angeles*, 2023 WL 4315544, at *8 (C.D. Cal. July 3, 2023)

Bevin.  The claims arose from family law legal proceedings that ended in 2009.  The stray reference to a *sua sponte* dismissal of a claim based on a SOL is found in the last paragraph with regard to the claim against the Pike County District Attorney – but the Order reflects that he had not even been served individually.  *Mischler*, at *2.  *Mischler* says nothing to establish any legal principle to support OTK's arguments.

OTK cites *Levald v. City of Palm Desert*, 998 F. 2d 680 (9th Cir. 1993) and *Leonhard v. United States*, 633 F. 2d 599, 609 (2d Cir. 1980).  In *Levald* the Defendant plead a SOL affirmative defense.  It moved to dismiss the complaint on that basis and the motion was denied.  The litigation continued and, eventually, came back before the court on a different motion to dismiss on different grounds.  At that point, the trial judge entered a *sua sponte* dismissal based on the SOL.  The Ninth Circuit described the difference between the *sua sponte* application of a SOL defense that was not waived (permissible) versus applying a SOL defense that was waived (impermissible).  *Leonhard* is cited in *Levald*.  As set out in footnote 11 of *Leonhard*, that Defendant had asserted a SOL defense and then the Plaintiff's own filings established the factual basis of the defense.

16

Last, OTK says that *Annette v. Haslam*, 2020 WL 2520512 (M.D. Tenn. 2020) stands for the proposition that allegations that contravene a SOL cannot be well plead when a Plaintiff has notice the claims run up against a SOL. In *Annette* the *pro se* Plaintiff was objecting to a Magistrate Judge's Recommendation that was consistent with an earlier ruling applying a properly asserted SOL defense.

Nothing in those cases has application here. To describe them as distinguishable is an understatement.

### D. The Opt-In Plaintiffs Complied with The Court's Orders and Were Deprived of Due Process.

OTK argues that because Plaintiffs filed a renewed motion for equitable tolling that, somehow, was sufficient opportunity to be heard. Factually, however, OTK's argument fails because the supplemental motion did not address the issues the district court had previously ordered should not be briefed until there was a supplemental scheduling order. (Doc. 204, PageID. 2153) The opt-in Plaintiffs complied with the district court's orders. Because the district court ruled without ever allowing submissions due process was not provided. (Docs. 93, 221)

Hornady explicitly acknowledged in his initial equitable tolling filing that the motion might be premature before all the opt-in Plaintiffs

17

were known.  (Doc. 22, p. 4)  OTK also took the position (understandably)

that all of the potential opt-in Plaintiffs were not yet before the Court.

(Doc. 66, pp. 1-2)  The district court also concluded that a ruling would be

premature. (Doc. 93, p. 1) It identified various issues as open questions

that would affect the scope of individualized evidence. (Doc. 93, pp 1-2)

It said the parties would be able to supplement their early motion

practice pursuant to a future scheduling order.

Later it ruled without allowing opt-in Plaintiffs to do so.  That

ruling was based, in part, on its view that nobody had shown even

individualized entitlement to relief:

> In order to determine whether any injustice will occur, the
> issue is whether, and to what extent, any of the opt-in
> Plaintiffs' claims will be barred by the two or three-year
> statute of limitations tied to their action.  Put another way:
> are there any opt-in Plaintiffs who will be unjustly harmed by
> the strict application of the FLSA statute of limitations to
> their claim period?  Is there an opt-in Plaintiff who may have
> filed her action earlier but for some misrepresentation on the
> part of the Defendant? If so, what is the identity of such opt-
> in Plaintiff(s)?  The Court does not know the answer to these
> questions because Plaintiffs have provided no such evidence.

(Doc. 276, PageId. 3564) The entirety of that analysis should have been

mooted by the striking of the SOL.  But a complete answer to the district

court's criticism that the Plaintiffs provided no evidence is that the

18

Plaintiffs had been unable to do so by the district court's stay Orders. Later, when the Plaintiffs attempted to quantify their damages (which would show who was harmed and how much harm was caused) the district court applied the SOL that OTK raised even though it was struck.[5]

Of course, none of this was malicious. The district court was dealing with an evolving procedural mess. The result, however, was still that the opt-in Plaintiffs who would benefit from equitable tolling were never provided with any opportunity to be heard. That is a deprivation of due process.

## <u>Conclusion</u>

For the reasons described, Hornady submits that this Court should affirm the district court in all respects except that it should instruct the

---

[5] By happenstance, the record also reflects the sort of showing opt-in Plaintiffs could have made about OTK's misrepresentations had those submissions not been stayed. On October 3, 2018, OTK's Vice-President for Human Resources for the Americas, Dave Scheid, used OTK's intranet to tell all OTK's Alabama employees that the company had "**reviewed the situation and we believe we are in full compliance**. . ." (Doc. 65, p. 5) This statement was made long before opt-in notices were sent with court supervision. When Scheid testified by deposition in 2020 he admitted that, in fact, OTK had not done anything to "review" its practices. (See Doc. 187-2, PageId. 1460-1462, Doc. 192, PageId. 1993)

district court to amend the judgment to award a total of $16,679,460.22

as shown on Doc. 407-10.

July 28, 2023.

Respectfully submitted,

By:   /s/ Ian D. Rosenthal
Ian D. Rosenthal

DAVIS, DAVIS & ASSOCIATES
Ian D. Rosenthal
27180 Pollard Road
Daphne, Alabama 36526
(251) 621-1555
ian@ddalawfirm.com

MCDOWELL KNIGHT ROEDDER
    & SLEDGE, LLC
Frederick G. Helmsing, Jr.
11 North Water Street, Suite 13290
Mobile, Alabama 36602
(251) 432-5300
fhelmsing@mcdowellknight.com

SIMS LAW FIRM, LLC
Patrick H. Sims
P.O. Box 7112
Mobile, AL 36670
(251) 490-9424
Patrick@simslawfirm.net

*Counsel for William Hornady et al.*

_____

No. 22-13691-HH

*William Hornady, et al. v. Outokumpu Stainless USA, LLC*

_____

**CERTIFICATE OF COMPLIANCE WITH RULE 32**

This submission complies with the type-face requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in 14-point Century Schoolbook, which is a proportionally spaced font that includes serifs.

The foregoing complies with the word limit and contains 4065 words.

_____

*/s/ Ian D. Rosenthal*
OF COUNSEL

Dated: July 28, 2023.

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 28, 2023, I electronically filed the foregoing document using the Court's CM/ECF system for filing which will send notification of such filing to the following:

**Devin C. Dolive, Esq.**
Burr & Forman, LLP
420 North 20th Street – Suite 3400
Birmingham, Alabama 32503
ddolive@burr.com

**Cheri Turnage Gatlin, Esq.**
Burr & Forman, LLP
190 East Capitol Street, Ste M – 100
Jackson, MS 39201
cgatlin@burr.com


*/s/ Ian D. Rosenthal*
COUNSEL